The STATE ex rel. O'CONNOR, Appellee,

v.

DAVIS, Executive, County of Summit, et al., Appellants.

[Cite as *State ex rel. O'Connor v. Davis* (2000), 139 Ohio App.3d 701.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19333.

Decided Aug. 30, 2000.

702

*Michael T. Callahan,* Summit County Prosecuting Attorney, *William E. Schultz* and *Allyson Miller Leonard,* Assistant Prosecuting Attorneys, for appellee.

*Betty D. Montgomery,* Attorney General, and *Kimberly L. Charles,* Assistant Attorney General, for appellee.

*Stephen M. O'Bryan* and *Joshua D. Goldstein,* for appellants.

*Thomas A. Luebbers,* for *amicus curiae* County Commissioners Association of Ohio.

BATCHELDER, Judge.

Appellants, Tim Davis, the County Executive, Lewis W. Adkins, Jr., the Executive's General Counsel, David L. Nott, the Executive's Associate General Counsel, John D. Thomas, the Clerk of Summit County Council, and the members of the Summit County Council, in their official capacities, and the County of Summit appeal from the decision of the Summit County Court of Common Pleas, finding Summit County Ordinance 98–282 unconstitutional and enjoining its operation. We affirm.

I

On June 15, 1998, the Summit County Council enacted Ordinance 98–282.[1] The ordinance provides:

"The General Counsel is hereby authorized to represent the County Executive, and all departments under the authority of the County Executive, in all courts of law and equity, both state and federal, and to prosecute and defend all suits in which the County Executive, or any department under the authority of the County Executive, is a party.

"The General Counsel is hereby authorized, without consultation with the County Prosecutor, to recommend to the County Council, in accordance with the

---

1. Ordinance 98–282 became effective on June 22, 1998, and is codified at Summit County Codified Ordinances 131.01.

provisions of the Summit County Ordinances concerning professional contracts, that outside legal counsel be retained to represent the Summit County Executive, or any department under the authority of the County Executive, in a particular suit or proceeding, whether state or federal."

Ordinance 98–282 authorizes the General Counsel to represent the County Executive and all departments under his authority in all courts of law. The ordinance further authorizes the General Counsel to recommend to Summit County Council, without consultation with the Summit County Prosecuting Attorney ("Prosecutor"), that outside counsel be retained to represent the County Executive or any department under his control in a particular suit or proceeding.

On July 10, 1998, Maureen O'Connor, in her official capacity as Prosecutor, filed a complaint in the Summit County Court of Common Pleas seeking a declaratory judgment that Ordinance 98–282 was unconstitutional and also seeking an injunction restraining its operation. The trial court heard oral arguments on the legal questions presented by this case and, subsequently, in a decision journalized on October 1, 1998, issued an order finding Ordinance 98–282 unconstitutional and enjoining its operation. This appeal followed.

II

Appellants assert three assignments of error. We will address each in turn.

A

First Assignment of Error

"The trial court erred by holding that Ordinance No. 98–282 is unconstitutional."

The issue before this court is whether the ordinance, which carries a presumption of constitutionality, conflicts with the general laws of the state of Ohio, and, therefore, is unconstitutional. Because this case presents a question of law, our review is *de novo*. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686.

Section 1, Article X of the Ohio Constitution states that "[t]he general assembly shall provide by general law for the organization and government of counties * * *."[2] Section 3, Article X of the Ohio Constitution allows the people of a county to frame a charter, stating:

2. Section 1, Article X of the Ohio Constitution also authorizes the General Assembly to "provide by general law alternative forms of county government." R.C. Chapter 302 addresses such forms of county government. See *Zents v. Bd. of Commrs.* (1984), 9 Ohio St.3d 204, 208, 9 OBR 516, 520, 459 N.E.2d 881, 886, fn. 8 (Holmes, J., dissenting) ("No county has

"Every such charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election. It shall provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law."

█ Pursuant to this section of the Ohio Constitution, then, the powers and duties of county officers are established by the general laws of the state of Ohio. The Ohio Supreme Court has held that Section 3, Article X of the Ohio Constitution, which allows the people of a county to establish a charter form of government, does not limit the power of the General Assembly "by general laws to provide for the * * * 'government of counties'" under Section 1, Article X. *Blacker v. Wiethe* (1968), 16 Ohio St.2d 65, 45 O.O.2d 367, 242 N.E.2d 655, paragraph three of the syllabus. Thus, while the powers and duties of county government are established by the general laws of the state of Ohio, the charter document provides for the "form" as well as the "exercise" and "performance" of those powers and duties. Section 4.01, Article IV of the Summit County Charter ("the Charter"), as it existed at the time this litigation was initiated, provided that the duties of the Prosecutor "shall continue to be determined in the manner provided by general law * * *." [3] Therefore, in order to determine the powers and duties of the Prosecutor, we look to the general laws of Ohio. When a charter form of government attempts to exercise powers exceeding those conferred by the Ohio Constitution and the Revised Code, it lacks authority to do so.

The parties to this action refer us to two statutes of the Revised Code, arguing different interpretations of the statutes as they apply to the case at hand.[4]

R.C. 309.09(A) provides:

---

adopted an alternative form of county government and only one county, *i.e.*, Summit, has adopted a county charter form of government.").

**3.** This provision was changed by Charter amendment in the election of November 3, 1998, after the judgment of the trial court was entered in this case. The amended version states that County Council has authority to change the duties of the elected officeholders by ordinance or resolution and also provides that County Council may set their salaries at a higher level than that set by general law. Issues with respect to that amendment are not before this court. Section 4.01, Article IV, Summit County Charter.

**4.** The 1978 amendments to R.C. 305.14 and 309.09 created an exception to the general rule and allowed for outside counsel in prescribed circumstances. Essentially, the amendments allowed a board of county commissioners to employ outside legal counsel without going to the court of common pleas upon a joint application with the Prosecutor. Journalization, duration, and monetary limitations applied. See R.C. 309.09(C). These amendments were in place prior to the initial adoption of the Summit County Charter. They created no change in the general laws during the time in which Summit County's charter government has been in existence.

"*The prosecuting attorney shall be the legal adviser* of the board of county commissioners, board of elections, and all other county officers and boards * * *. *The prosecuting attorney shall prosecute and defend all suits and actions* which any such officer or board directs or to which it is a party, and *no county officer may employ any other counsel or attorney* at the expense of the county, except as provided in section 305.14 of the Revised Code." (Emphasis added.)

According to this statute, the Prosecutor has the statutory responsibility and authority to advise, prosecute, and defend county officers and boards as specified. Further, no county officer is authorized to employ any other counsel, except as provided in R.C. 305.14. That statute, in turn, provides for two separate procedures—exceptions to the general rule of R.C. 309.09—whereby outside counsel may be employed.

First, upon the joint application of a board of county commissioners *and* the prosecuting attorney to the court of common pleas, the court may authorize the board to hire legal counsel "*to assist*" the prosecuting attorney, board, or other county officer in "matter[s] of public business coming before such board or officer," and in the "*prosecution or defense*" of any action in which they are parties or have an interest in their official capacities. R.C. 305.14(A). This option is narrowly limited to those situations where the board of county commissioners and the Prosecutor *jointly* apply to the court of common pleas. Such outside counsel may then assist or represent the Prosecutor, the board, or any other county officer.

The second exception does not require the county prosecutor or the court of common pleas to be involved. Rather, the board of county commissioners may, on its own, employ legal counsel to "represent it in any matter of public business coming before such board," and in the prosecution or defense of any action or proceeding in their official capacities. R.C. 305.14(B). This exception is not without limiting features, however. In this situation, R.C. 309.09(C) requires that where a board of county commissioners employs outside counsel, it may do so "either for a particular matter or on an annual basis" and the board "shall enter upon its journal an order of the board in which the compensation to be paid for the legal services shall be fixed. The compensation shall be paid from the county general fund. The total compensation paid, in any year, by the board of county commissioners for legal services under this division shall not exceed the total annual compensation of the prosecuting attorney for that county."

Therefore, while a board of county commissioners, acting alone, may appoint outside counsel for purposes of legal representation and advice, this power is limited by appropriate journalization as well as duration and monetary constraints. The total compensation paid, in any year, by the board of county commissioners for legal services under this division may not exceed the total

annual compensation of the prosecuting attorney for that county. R.C. 309.09(C). Accordingly, the general laws grant authorization to boards of county commissioners, acting alone, to retain outside counsel but carefully limit that authorization.

This case, then, requires this court to consider the application of these statutes, which speak of boards of county commissioners, to the charter government of Summit County and specifically to determine whether Ordinance 98–282 is in conflict with them. We first observe that there are not two sets of general laws: one for commissioner forms of government and one for charter forms of government. We also note that all relevant portions of these statutes were in place before Summit County created its charter form of government.

Although the apparent inconsistency of the language presents the opportunity for an activist court to rewrite the ordinance utilizing its own views of what the policy merits are and engage in what some might term judicial legislation, we view such activism as inappropriate. As Montesquieu warned: "Again, there is no liberty, if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be then the legislator." M. De Secondat, Baron de Montesquieu, The Spirit of Laws (Thomas Nugent trans. 1902) 163. While we can imagine a democracy in which judges were allowed to rewrite the laws, the founders of both our nation and state chose to balance the powers of the branches of government, one against another, rather than entrust any one branch with the power to dominate. This court respects the principle of separation of powers and is duty bound to operate within the confines of the judicial branch and, hence, will not rewrite legislation.

Upon this framework, we consider the two sections of Ordinance 98–282 in turn.

1

We first consider the section of Ordinance 98–282 that authorizes the General Counsel to legally represent the County Executive in all courts of law in all suits in which the Executive or any department under his control is a party. Nearly twenty years ago in *Summit Cty. ex rel. Slaby v. Morgan* (Nov. 25, 1981), Summit App. No. 10270, unreported, 1981 WL 4253, this court determined that County Council had the legislative authority to create the office of General Counsel and that the County Executive was authorized to fill the position. *Id.* at 8.

The court also observed that the position of General Counsel was "a personal aide to the executive," *id.* at 9, but that its creation did not "impart power or duty * * * to represent the executive in his official capacity." *Id.* at 12. That

statutory obligation, according to the Charter, remained with the Prosecutor. *Id.* In its analysis, the court recognized the distinction between advising and representing and specifically stated: "In and of itself the creation of the position does not serve in any manner to impart power or duty upon its occupant to *represent* the executive in his official capacity." (Emphasis added.) *Id.* at 12. The court further indicated that since the Charter specifically obligates the Prosecutor to perform the duties set by the general laws of the state, he or she shall represent the various county officials in their official capacities. To place those powers upon the General Counsel would be "contradictory to those [powers] *statutorily* reserved to the prosecuting attorney." (Emphasis added.) *Id.* at 12. The court explained:

"We are of the opinion that the prosecuting attorney alone is the legal representative of both the county council and executive within the prescribed limits of the statutes of this state." *Id.* at 13.

Thus, it was the clear understanding for nearly twenty years that the creation of the position of General Counsel was for purposes of establishing a legal *advisor* to the agencies of county government, but that office was not empowered by law or charter to *represent* any of these entities. *Id.* at 14. That obligation falls, by general law, to the Prosecutor. See R.C. 309.09(A). The relevant portions of the statutes involved, R.C. 309.09 and 305.14, remain unchanged since that time.

We continue to hold to the position that this court took at that time, namely, that the General Counsel may advise the County Executive and its agencies, but the Prosecutor shall represent them. The court carefully explained:

"[T]he creation of the position of general counsel in the manner and form discussed at length above does nothing to super[s]ede or conflict with the powers and duties emplaced upon the prosecuting attorney by previous statutory enactments." *Summit Cty. ex rel. Slaby, supra,* at 13.

██ Indeed, it may not. Pursuant to the Ohio Constitution, the powers and duties of the prosecuting attorney are established by general law. This ordinance may not grant power and or create a duty that conflicts with the general laws. Because the first paragraph of Ordinance 98–282 attempts to diminish the statutory duties of the prosecuting attorney relating to the representation of the County Executive under R.C. 309.09, the ordinance conflicts with general law. We hold that the first section of the ordinance is unconstitutional.

2

The second section of the ordinance permits the General Counsel to recommend to County Council that outside legal counsel be retained to represent the County Executive or the agencies of that office.

Appellants make a preliminary argument contending that the County Charter affords the County Executive alone the same right to be represented by outside counsel as boards of county commissioners have. Appellants make this argument based on an analysis of the powers delegated to the County Executive, as opposed to those delegated to the County Council. Appellants contend, based upon the Charter, that the County Executive has both the executive and legislative authority of a board of county commissioners. We reject this argument.

The Charter speaks to the division of powers in county government in several provisions. Article III of the Charter demonstrates that the County Council is the legislative branch of county government. Section 3.01.1, Article III of the Charter states: "The *County Council* shall be the *legislative* authority and taxing authority of the County." (Emphasis added.) Similarly, Section 3.03, Article III of the Charter states: "The *legislative* power of the County is vested in the *County Council.*" (Emphasis added.) Clearly, the County Council, by definition as well as by delegation of duties specified in the Charter, has the legislative responsibility in county government.

Article II of the Charter, on the other hand, demonstrates that the County Executive represents the executive and administrative branch of county government. Section 2.01, Article II of the Charter states: "The *County Executive* shall be the chief *executive* officer of the County." (Emphasis added.) Further, Section 2.03, Article II of the Charter states:

"The *County Executive* shall have all powers and all duties of an *administrative or executive* nature under this Charter and *such powers and duties,* except as otherwise provided herein, *as are vested in or imposed upon boards of county commissioners* by general law." (Emphasis added.)

Appellants contend that Section 2.03, Article II of the Charter vests the County Executive with all the powers and duties of a board of county commissioners. An examination of the Charter, however, demonstrates the error of this claim.

At the outset, we observe that Section 2.01, Article II of the Charter states the general premise that the County Executive is, indeed, the chief executive officer of the county government. We also find Section 2.03, Article II of the Charter to be in harmony with Section 2.01, Article II. Specifically, Section 2.03, Article II vests the County Executive with all powers and duties under the Charter that are administrative or executive by nature, as well as those powers and duties vested in or imposed upon boards of county commissioners by general law *that are administrative or executive by nature,* except as otherwise provided by the Charter. General principles of statutory construction require us to give meaning to every word of the provision. *KeyCorp. v. Tracy* (1999), 87 Ohio St.3d 238, 241, 719 N.E.2d 529, 531–532. The word "such" must, to be given meaning, refer back

to "administrative or executive" powers and duties. Therefore, the County Executive represents the executive branch of county government and is vested with those powers and duties that are administrative or executive. The provision is not intended to vest the County Executive alone with all of the powers and duties that County Commissioners otherwise have. For these reasons, we find that, on its face, the Charter does not provide that the County Executive may be represented by outside counsel on the same basis as boards of county commissioners. Further, if the County Executive were permitted to be represented by outside counsel on the same basis as county commissioners, it would give to one executive official authority that is coexistent with that of a three-member combined executive and legislative body. We believe that such a conclusion could threaten the balance of power by vesting exclusive, unchecked authority in one official. As the Ohio Supreme Court has recently stated:

"The reason the legislative, executive, and judicial powers are separate and balanced is to protect the people, not to protect the various branches of government." *State ex rel. Bray v. Russell* (2000), 89 Ohio St.3d 132, 135, 729 N.E.2d 359, 361–362.

■ For the foregoing reasons, we conclude that the Charter does not afford the County Executive both the executive and legislative authority possessed by boards of county commissioners. Hence, the County Executive may not act unilaterally to retain outside counsel for purposes of representation pursuant to R.C. 305.14(B).

Next, appellants argue that because R.C. 305.14(B) together with R.C. 309.09(C) allows a board of county commissioners to employ outside attorneys without an application to the court of common pleas, the prosecutor is not the exclusive legal representative of a board of county commissioners. Appellants reason from this conclusion that, because a board of county commissioners may—without joint application of the prosecutor or authorization of the court of common pleas—employ outside counsel, the County Executive and County Council together should be entitled to do the same.

However, the ordinance before us does not provide for joint action by the County Executive and the County Council. It provides instead for somewhat of a joint action by the General Counsel and the County Council. For purposes of the following discussion we assume, without deciding, that the County Executive may delegate authority to participate in the retention of outside council to the General Council. But, see, *Morgan v. Summit Cty. Council* (Feb. 4, 1987), Summit App. No. 12703, unreported, 1987 WL 6175.

Nevertheless, even were we to accept appellants' position, the County Executive and County Council would not merely have the same authority as boards of

county commissioners; rather, they would have more. This is so because R.C. 305.14 and 309.09 do not provide a general grant of authority, but instead a narrowly tailored authority that applies only with prescribed procedures and is subject to certain limitations. It is clear from a reading of the general statutes that the General Assembly did not intend outside counsel to conduct all the legal business of the county. Indeed, R.C. 309.09(A) begins with the presumption that the Prosecutor "shall be the legal adviser" to all county officers and boards and "shall prosecute and defend all suits and actions" which the officers and boards direct or to which they are parties, with only the exception of the provisions in R.C. 305.14. R.C. 305.14(A), which describes the procedure of joint application to the court of common pleas, has an inherent system of checks and balances involving the Prosecutor, the board of county commissioners, and the court system. At the same time, the exception in R.C. 305.14(B) is also limited, imposing a journalization requirement as well as duration and monetary restrictions upon a board of county commissioners. R.C. 309.09(C). These limitations align with the duties imposed by Section 3.01.1, Article III of the Charter, which recognizes County Council as the taxing authority for the County. The general laws, thus, grant authorization to boards of county commissioners to retain outside counsel, but carefully limit that authorization.[5] There are no statutes that provide counties with discretionary authority to hire unlimited outside counsel as this ordinance purports to do. This fact evidences a legislative intent that the Prosecuting Attorney be the primary representative of county officers and boards and that outside counsel be available only in a limited way.

 Appellants argued in the court below that the presumption of constitutionality requires the court to presume compliance with the duration and monetary requirements. The concept of presumption of constitutionality presupposes that the governing body will enforce the ordinance as written. To hold otherwise would require us to presume that the legislature intends to enforce something not written. Deference and respect for the legislative branch of government requires us to interpret the ordinance as it is written and not to judicially rewrite it. Accordingly, the second section of the ordinance, as presented, is overbroad and may not be enforced.

---

**5.** The recognition of this limitation does not concern specific funds and is not about a misapplication of funds; rather, it is a structural and substantive limitation. Our review of the statutory scheme enacted by the legislature suggests that the Prosecutor is the primary representative of county officers and boards, but where the county commissioners—or here through the joint action of the County Executive and County Counsel—choose to retain outside counsel pursuant to R.C. 305.14(B), they are subject to the statutory limitations of R.C. 309.09(C), *i.e.*, they may not exceed the annual compensation of the prosecuting attorney for the county. This enforces the position that the Prosecutor will continue to be the main legal representative of county boards and officers, yet it would allow Summit County to participate on a level with other counties.

■ Appellants also argue, though this is not a major portion of their appellate argument, that allowing outside counsel in this case would support a statutory purpose because there is some question "whether the prosecutor can effectively investigate, and simultaneously, represent, her clients." If the appellants wished to advance this claim, they had an obligation to make a record to support the claim. This, they failed to do. However, the state of Ohio is prepared to address actual conflicts of interest through the procedures outlined in *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 20 O.O.3d 388, 423 N.E.2d 105.[6] The matter before this court, however, is a declaratory judgment action regarding the constitutionality of an ordinance and does not invoke the question of conflict of interest between the parties.

To the extent that this issue arises because the County Executive and County Prosecutor are of different political parties, this is a potentiality that has existed in the commissioner form of government as long as we have had commissioners and prosecutors.[7] It is also a foreseeable result of the form of charter govern-

---

6. See, *e.g., State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 20 O.O.3d 388, 423 N.E.2d 105. In *Seminatore*, the Ohio Supreme Court considered the question of to what extent and how public officers are entitled to counsel when an action is brought against them by the public officer who is required to serve as their attorney. The Supreme Court held:

"Where the prosecuting attorney brings an action against such county board or officer in his official capacity, it is ordinarily in the best interests of the county that separate, independent counsel be appointed to defend such county officer or board in order to assure that there be no conflict of interests and that the county receive proper representation on both sides of the the issue involved." *Id.* at 465, 20 O.O.3d at 391, 423 N.E.2d at 110.

The court also reasoned:

"Where, as here, either the prosecuting attorney or the board of county commissioners refuses to afford counsel to a county board in defense of an action pending against the members of that board, mandamus would be an appropriate remedy to compel the prosecuting attorney and the board to make application to the common pleas court, because failure to do so constitutes an abuse of discretion." *Id.* at 463–464, 20 O.O.3d at 391, 423 N.E.2d at 109.

The Ohio Supreme Court acknowledged that the statute contemplates a joint application for appointment of outside counsel, but in practical recognition of the possibilities of a conflict of interest, the failure of the prosecuting attorney to join in the application to the court of common pleas could not be allowed to "defeat the jurisdiction otherwise vested in the common pleas court to authorize appointment of counsel." *Id.* at 465, 20 O.O.3d at 392, 423 N.E.2d at 110.

Thus, pursuant to the principles of *Seminatore* (and the principles of separation of powers), the prosecuting attorney has the general duty to defend all actions to which any county officer or board is a party, but if independent counsel is deemed necessary in the event of a conflict of interest, the procedures for appointment of such counsel are available by appropriate application to the judicial system.

7. See, *e.g., State ex rel. Jefferson Cty. Children Serv. Bd. v. Hallock* (1986), 28 Ohio St.3d 179, 184–185, 28 OBR 269, 273–274, 502 N.E.2d 1036, 1040–1041 (Douglas, J., dissenting). In his dissent, Justice Douglas wrote:

"Disputes over contractual matters or general discord and frustration between the parties, as cited by the common pleas court, general division, do not rise to the level of conflicts of

ment that the people of Summit County have adopted. It very well may be that this is a perfectly appropriate form of checks and balances. But, if not, then the remedy is a political one—to change the relationship of County Prosecutor and County Executive. That remedy must be sought with the legislature and not with the judiciary.

While the County Council or the voters may be able to achieve the goals intended by these statutes by other means, we conclude that the means employed here were not permitted under the Ohio Constitution and the laws of the state of Ohio. Consequently, we overrule this assignment of error.

## B

### Second Assignment of Error

"The trial court erred by holding that Ordinance No. 98–282 is not a matter of local self–government."

Appellants contend that Ordinance 98–282 involves only the internal affairs of the County and is, therefore, an appropriate exercise of local self-government. This argument is without merit.

Even in a properly established charter form of county government, the General Assembly continues to provide by general law for the "government of counties." Section 1, Article X, Ohio Constitution; see *Blacker* at paragraph three of the syllabus. The Ohio Supreme Court has observed that even "cities' powers of local self-government are not completely unfettered." *Kettering v. State Emp. Relations Bd.* (1986), 26 Ohio St.3d 50, 53, 26 OBR 42, 45, 496 N.E.2d 983, 986. Indeed, the powers of local self-government must yield to statewide concerns where there is "legislative intent to provide a comprehensive, uniform framework," *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311, 313, or where a "comprehensive statutory plan is * * * necessary to promote the safety and welfare of all the citizens of the state," *Kettering*, 26 Ohio St.3d at 55, 26 OBR at 47, 496 N.E.2d at 983, 988 (holding that the maintenance of stable employment relations between police officers and their employers was a matter of statewide concern). Similarly, the administration and operation of a system of courts has been found to be a matter of state

---

interest. * * * [T]he prosecutor should retain the authority to represent, as is his statutory duty, [the board] on all other matters.

"The converse of this position is perilous indeed. As a practical matter, for example, any time a prosecutor initiates an investigation into the activities of a county commissioner, board, officer, library or township officer, is the prosecutor to be foreclosed from serving that respective entity's other public-related legal needs? If this practice would become the rule, the prosecutor would be effectively paralyzed in all but investigative and prosecutorial endeavors. This result was never the aim of R.C. 309.09 or 305.14." *Id.*

sovereignty. *State ex rel. Ramey v. Davis* (1929), 119 Ohio St. 596, 165 N.E. 298, paragraph one of the syllabus; see, also, *Cupps v. Toledo* (1959), 170 Ohio St. 144, 10 O.O.2d 95, 163 N.E.2d 384, paragraph one of the syllabus (concluding that municipal powers of local self-government do not extend to regulation of the jurisdiction of courts established by the Ohio Constitution or the General Assembly). Certainly, the prosecuting attorney has a unique position in the statewide system of the administration of justice. The general laws evidence a legislative intent to provide a comprehensive, uniform framework for the role of the prosecuting attorney.

■ We find that the duties of a prosecuting attorney extend to matters of general and statewide concern. See, *e.g.*, R.C. 309.08. They do not relate solely to the internal affairs of the county. The second assignment of error is overruled.

## C

### Third Assignment of Error

"The trial court erred by holding that the Prosecutor has capacity to sue her own clients."

In this assigned error, appellants contend that the Prosecutor has no statutory authority to bring this action. They also aver that because appellants are her clients, she may not sue them.[8]

[10, 11] Ours is a government of laws, and all—including the parties herein—are required to obey those laws. One of the principles of government under law is that each individual has the right to know what the law is, especially when it affects his or her own duties and obligations. This general principle leads to the conclusion that citizens, including government officials, have the right—and sometimes the duty—to pursue declaratory judgment in actual cases and controversies in order to determine the contours of their legal rights and responsibilities.

■ Declaratory judgment laws are to be "liberally construed and administered." R.C. 2721.13; accord *Sessions v. Skelton* (1955), 163 Ohio St. 409, 56 O.O. 370, 127 N.E.2d 378, paragraph one of the syllabus. Nothing in R.C. Chapter 2721 precludes the plaintiff as prosecutor from bringing a declaratory judgment action. Indeed, declaratory relief is an appropriate means by which to determine the validity of legislation. See, *e.g.*, *Karches v. Cincinnati* (1988), 38 Ohio St.3d

---

8. This issue was raised by a motion to dismiss below, which motion was denied by the trial court.

12, 526 N.E.2d 1350, paragraph one of the syllabus. Further, joinder of the public officers as parties assures that the parties will be properly adverse,[9] that the issues will be fully presented, that uncertainty will be terminated, and that the public interest will be adequately protected. *Cincinnati v. Whitman* (1975), 44 Ohio St.2d 58, 61, 73 O.O.2d 283, 284–285, 337 N.E.2d 773, 775. Accordingly, this assignment is overruled.

### III

Underlying the obvious legal issues raised by the litigants in this case is a transcendent subject of intellectual inquiry and utilitarian debate throughout Western history: How are the benefits of civil government to be effectively derived without a loss of individual liberty? Plato, in the *Republic,* denominates a group of citizens who serve as "guardians" of the state and of individuals in the state. The Roman poet and satirist Juvenal asks the obvious question in response to Plato's postulate, "But who is to keep guard over the guardians themselves?" Juvenal: The Sixteen Satires (Peter Green trans. 1967) 140. That is, who will be certain that the guardians do not take advantage of their positions to the detriment of the citizens?

In Anglo–American law, the practical problem of creating inherent restraints over concentrated governmental forces goes back at least to Magna Charta. The Framers of the American Constitution were well acquainted with and cited with approbation in debate and writings the works of the Baron Montesquieu and John Locke. Montesquieu, a very early scholar of comparative government, praised the British form of government for separating power by function:

"When the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty; because apprehensions may arise, lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner.

"Again, there is no liberty, if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be then the legislator. Were it joined to the executive power, the judge might behave with violence and oppression." Montesquieu, *supra,* at 163.

John Locke first examined the theoretical underpinnings of the doctrine of separation of powers into three branches of government to provide a defense for the citizen from an overwhelming centralization of power. See John Locke, Two Treatises of Government (Thomas I. Cook ed. 1947) 165–166, 194–197.

---

**9.** Traditionally, the manner in which to assure adverse parties is to have separate counsel. We observe that in the case at bar, the parties are so represented.

At the time of the dramatic debates on the adoption of the federal Constitution, both the Federalists and the Anti–Federalists agreed that separation of powers was essential to preserve individual liberty. "The accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny." The Federalist No. 47 (James Madison).

We need not belabor the point, but we would make clear that courts ought always to be quite cautious in construing laws so as to alter the powers and responsibilities of the various branches and individual public offices.

These words of the United States Supreme Court are perhaps now apt:

"That this system of division and separation of powers produces conflicts, confusion, and discordance at times is inherent, but it was deliberately so structured to assure full, vigorous, and open debate on the great issues affecting the people and to provide avenues for the operation of checks on the exercise of governmental power." *Bowsher v. Synar* (1986), 478 U.S. 714, 722, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583, 594.

Accordingly, appellants' three assignments of error are overruled. The judgment of Summit County Court of Common Pleas, declaring Summit County Ordinance 98–282 to be unconstitutional and void, is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and SLABY, J., concur.