[Cite as *State ex rel. Hamilton Cty. Bd. of Commrs. v. Hamilton Cty. Court of Common Pleas*, 126 Ohio St.3d 111, 2010-Ohio-2467.]

THE STATE EX REL. HAMILTON COUNTY BOARD OF COMMISSIONERS *v.*

HAMILTON COUNTY COURT OF COMMON PLEAS ET AL.

[Cite as *State ex rel. Hamilton Cty. Bd. of Commrs. v. Hamilton Cty. Court of*

*Common Pleas*, 126 Ohio St.3d 111, 2010-Ohio-2467.]

*County Commissioners' employment of special counsel — R.C. 305.14 —*

*Termination of authorization by common pleas court.*

(No. 2009-2068 — Submitted April 20, 2010 — Decided June 9, 2010.)

IN PROHIBITION.

_____

**Per Curiam.**

**{¶ 1}** This is an original action for a writ of prohibition to prevent a common pleas court and 12 of its judges from terminating the board of county commissioners' employment of special counsel, which had previously been approved by the court, and to vacate their order terminating the employment of special counsel. Because the common pleas court and the judges did not patently and unambiguously lack jurisdiction to do so, we deny the requested writ of prohibition.

**I. Facts**

*A. Retainer of Special Counsel for the*

*Cincinnati Riverfront-Development Project*

**{¶ 2}** Since 1996, relator, Hamilton County Board of County Commissioners, and the city of Cincinnati have jointly planned and implemented a project for the redevelopment of Cincinnati's riverfront. Throughout the redevelopment efforts, the board has faced numerous complex legal challenges.

**{¶ 3}** During the 1990s, the county employed special counsel to assist in the riverfront project by performing title searches related to the acquisition of property for the construction of Paul Brown Stadium (the new football stadium), negotiating contracts to acquire property, negotiating a major redevelopment agreement with the city, and representing the county in subsequent redevelopment and related agreements.

**{¶ 4}** Before March 2000, the county prosecuting attorney and certain other counsel served as the board's counsel for the construction of Paul Brown Stadium. After an independent audit found that the new football stadium would have a $51 million cost overrun, the board decided to retain special counsel in the next phase of the riverfront-development project – the construction of the Great American Ball Park (the new baseball stadium). At the board's request, special counsel assisted the county on various legal issues pertaining to the construction of the new baseball stadium and related infrastructure. The board concluded that the involvement of special counsel was essential to protect the county's interests, given the specialized knowledge and experience required to manage the complex legal aspects of the riverfront-development project.

**{¶ 5}** More specifically, in 1999, respondent Hamilton County Court of Common Pleas approved the joint application of the board of commissioners and the prosecuting attorney pursuant to R.C. 305.14. The court authorized the board to "employ and compensate separate counsel for the purpose of challenging the valuation of certain parcels of real property obtained by Hamilton County in connection with riverfront development projects." In 2000, the common pleas court approved the joint application of the board and the prosecuting attorney and authorized the board to "employ and compensate separate counsel to assist the Prosecuting Attorney in all matters related to the Cincinnati Bengals and Cincinnati Reds Stadium Projects as well as related riverfront development issues."

### B. *Joint Application to Continue Employment of Special Counsel*

{¶ 6}   In 2002, the board wished to continue the employment of special counsel to provide legal services to the county on riverfront-development and baseball-stadium issues.  On December 11, 2002, the board adopted a resolution to join with the prosecuting attorney to apply to the court of common pleas for "continued authority to retain and compensate special counsel to assist Hamilton County" in matters related to the riverfront development and the new baseball stadium.  The board also authorized the county administrator to execute a retainer agreement with special counsel.  In its resolution, the board noted that "services to be provided by such special counsel shall supplement those services to be provided by the Prosecuting Attorney pursuant to statute and any other services as may be requested from time to time by Hamilton County, Ohio, its offices, boards, departments, employees or institutions, and such special counsel's services shall not be deemed an abrogation or derogation by the Prosecuting Attorney of any of the Prosecuting Attorney's statutory responsibilities."

{¶ 7}   On December 17, 2002, the then county prosecuting attorney filed a joint application on behalf of both himself and the board of county commissioners pursuant to R.C. 305.14 with the court of common pleas for an order authorizing the board to continue to employ special counsel to be compensated by the board.  On that same day, the court, in case No. M0201052, entered the requested order authorizing the board "to continue to employ special counsel to assist Hamilton County, Ohio, its offices, boards, departments, employees and institutions in all matters related to the development of the Cincinnati Central Riverfront Area and the Great American Ball Park."  The court's order also specified that "[c]ounsel will be compensated in an amount and manner determined by the Board."

{¶ 8}   Under the retainer agreement between the board and the law firm of Vorys, Sater, Seymour & Pease, L.L.P., special counsel was to provide legal

services related to the riverfront and stadium issues, and the agreement could be terminated by either the board or special counsel. Like the board's resolution, the retainer agreement stated that special counsel's services would "supplement" the services to be provided by the prosecutor and would not be deemed an "abrogation or derogation" by the prosecutor of his statutory responsibilities.

{¶ 9} Pursuant to the court order approving the joint application and the retainer agreement, special counsel has continued its attorney-client relationship with the board by providing legal services on a variety of riverfront-development issues, including the defense of certain multimillion-dollar claims.

*C. The Successor Prosecuting Attorney's Objection*

{¶ 10} In December 2008, intervening respondent, Hamilton County Prosecuting Attorney Joseph T. Deters, submitted to the board a proposed order fixing the aggregate amount of compensation for the prosecutor's office. After the board recommended a budget for the prosecutor's office that was over $1 million less than he had requested, the prosecuting attorney sent a letter dated December 16, 2008, to the board in which he questioned the board's "preferential treatment of outside counsel." Although the prosecutor conceded that special counsel "has a fine reputation and is both competent and professional," he objected to the amount of money paid to the Vorys firm, which he claimed was over $12,000,000 since 2004, as well as the purported lack of oversight of the hours or work by the firm. The prosecuting attorney concluded that effective January 1, 2009, he was withdrawing his consent to the board's employment of outside counsel until the issues he raised were addressed to his satisfaction.

*D. Ex Parte Common Pleas Court Proceeding*

{¶ 11} On October 15, 2009, without the board's knowledge, direction, or consent, the prosecuting attorney and the chief of his office's civil division, James W. Harper, appeared at an administrative meeting of the judges of the Hamilton County Court of Common Pleas, with 13 of the judges being present. The

prosecuting attorney requested that the judges sign an entry terminating the employment of special counsel effective January 1, 2010. This issue was not on the agenda and the judges did not have prior notice of it, but by tradition and at the discretion of the presiding judge, joint sessions of the common pleas court were not strictly limited to agenda items.

{¶ 12} According to the minutes of the meeting, the prosecuting attorney noted that a statute allowed the board of county commissioners "to hire outside counsel up to the amount of his annual salary, approximately $74,000." He objected to the amount of money spent by the county on special counsel. The prosecutor stated that he had talked with two of the three commissioners about the need to place tighter controls on the use of outside counsel. Harper mentioned that the contracts employing special counsel could be terminated by the board. The minutes give no indication that he informed the court that the commissioners had not requested or authorized termination.

{¶ 13} Twelve of the 13 judges present at the meeting signed the proposed entry, in which the common pleas court ordered that "the appointment and employment of special counsel under this Case No. M0201052 is terminated effective January 1, 2010." The entry further provided, "Nothing in this Order prevents the Board of County Commissioners of Hamilton County, Ohio, and the Prosecuting Attorney of Hamilton County, Ohio, from seeking a new Order Authorizing the Appointment of Special Counsel upon such terms and conditions as may be mutually agreeable and in the public interest." The only judge present at the meeting who did not sign the entry was the second successor to the judge who had signed the December 17, 2002 entry authorizing the continuing employment of special counsel. The court's practice is to assign matters in miscellaneous cases like case No. M0201052 to the administrative judge.

*E.  Subsequent Attempts to Vacate Order*

**{¶ 14}** The board was notified of the order terminating the employment of special counsel after it was entered. The board requested that the prosecuting attorney seek to vacate the order because it was entered without the board's knowledge, direction, or consent, but the prosecuting attorney refused to do so. On October 21, the board requested that the court vacate the order, and at another administrative meeting a week later, the court refused to do so. After the board received a copy of the draft minutes of the court's October 15 administrative meeting, a final attempt to resolve the dispute with the prosecuting attorney was unsuccessful.

### F. Prohibition Case

**{¶ 15}** On November 10, the board of county commissioners authorized two of its commissioners to institute a legal action to challenge the court's October 15 order terminating the employment of special counsel. Instead of appealing the order, the board filed this action on November 12 for a writ of prohibition to prevent respondents, the common pleas court and the 12 judges who signed the order, from terminating the relationship between special counsel and the board and to vacate the order terminating the appointment and employment of special counsel. The court of common pleas and judges filed a motion to dismiss the complaint. The prosecuting attorney's motion to intervene as a party respondent was granted, and he filed an answer and a motion for judgment on the pleadings. We denied respondents' motions and granted an alternative writ. *State ex rel. Hamilton Cty. Bd. of Commrs. v. Hamilton Cty. Court of Common Pleas*, 124 Ohio St.3d 1440, 2010-Ohio-188, 920 N.E.2d 371. The parties filed evidence and briefs, and amici curiae filed briefs.

**{¶ 16}** This cause is now before the court for our consideration of the merits.

### II. Legal Analysis

#### A. Prohibition

**{¶ 17}** The board of county commissioners claims entitlement to a writ of prohibition to prevent the court of common pleas and 12 of its judges from proceeding pursuant to their October 15 entry ordering the termination of the appointment and employment of special counsel for the board and to order the court and the 12 judges to vacate their October 15 order.

**{¶ 18}** To be entitled to the requested writ of prohibition, the board must establish that (1) the common pleas court and the 12 judges who signed the challenged order have exercised or are about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633, ¶ 25. The common pleas court and judges exercised judicial power in the underlying case by ordering the termination of the appointment and employment of special counsel for the board that had previously been authorized by the same court.

**{¶ 19}** For the remaining requirements, "[i]f a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition * * * will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 12. The dispositive issue is whether the common pleas court and the 12 judges who signed the challenged order patently and unambiguously lacked jurisdiction to terminate the previously authorized employment of special counsel by the board.

*B. Absence of a Patent and Unambiguous Lack of Jurisdiction*

**{¶ 20}** Under Section 4(B), Article IV of the Ohio Constitution, "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." This case

involves a common pleas court's authority over the legal representation of a county and its officers, boards, and employees.

{¶ 21} R.C. 309.09(A) specifies the general rule that "[t]he prosecuting attorney shall be the legal adviser of the board of county commissioners * * * and all other county officers and boards" and that "[t]he prosecuting attorney shall prosecute and defend all suits and actions which any such officer or board directs or to which it is a party, and no county officer may employ any other counsel of attorney at the expense of the county, *except as provided in section 305.14 of the Revised Code*." (Emphasis added.) See also *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, ¶ 26.

{¶ 22} Pursuant to R.C. 309.09(A), the prosecuting attorney "has the statutory responsibility and authority to advise, prosecute, and defend county officers and boards as specified." *State ex rel. O'Connor v. Davis* (2000), 139 Ohio App.3d 701, 706, 745 N.E.2d 494. R.C. 305.14 provides two separate exceptions to the general rule of R.C. 309.09(A).

{¶ 23} Under one of the exceptions, the board of county commissioners can employ an attorney other than the prosecuting attorney "either for a particular matter or on an annual basis" without the approval of either the prosecutor or the court of common pleas, but the compensation shall be paid from the county general fund and "[t]he total compensation paid, in any year, by the board for legal services under this division shall not exceed the total annual compensation of the prosecuting attorney for that county." R.C. 309.09(C). This exception is inapplicable to the board's employment of special counsel for the riverfront-development project because the board paid special counsel more than the total annual compensation for the prosecuting attorney.

{¶ 24} For the remaining exception, which authorized the board's employment of special counsel here, the General Assembly enacted R.C. 305.14, which confers jurisdiction on common pleas courts and their judges to authorize a

board of county commissioners to employ special counsel upon joint application of the prosecuting attorney and the board of county commissioners:

{¶ 25} "The court of common pleas, upon the application of the prosecuting attorney and the board of county commissioners, may authorize the board to employ legal counsel to assist the prosecuting attorney, the board, or any other county officer in any matter of public business coming before such board or officer, and in the prosecution or defense of any action or proceeding in which such board or officer is a party or has an interest, in its official capacity." R.C. 305.14(A).

{¶ 26} In construing R.C. 305.14(A), our paramount concern is the legislative intent in enacting it. *State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 25. "To discern this intent, we must 'read words and phrases in context according to the rules of grammar and common usage.' " *State ex rel. Mager v. State Teachers Retirement Sys. of Ohio*, 123 Ohio St.3d 195, 2009-Ohio-4908, 915 N.E.2d 320, ¶ 14, quoting *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23.

{¶ 27} The board of county commissioners asserts that the plain language of R.C. 305.14(A) provides no authority for a common pleas court or prosecuting attorney to terminate the employment of special counsel once that counsel has been retained pursuant to a joint application approved by the court. But for the following reasons, the board's assertion does not amount to a patent and unambiguous lack of jurisdiction on the part of the common pleas court and its judges to do so.

{¶ 28} First, notwithstanding the express language of R.C. 305.14(A), the common pleas court may act to appoint counsel other than the prosecuting attorney to represent the board of county commissioners if the prosecuting attorney has a conflict of interest *even in the absence of the joint application specified in R.C. 305.14(A)* when the prosecutor refuses to join in the application.

See, e.g., *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 20 O.O.3d 388, 423 N.E.2d 105, paragraph one of the syllabus ("Application by both the prosecuting attorney and the board of county commissioners is a prerequisite to authorization by a court of common pleas pursuant to R.C. 305.14 of appointment of other counsel to represent a county office, except where the prosecuting attorney has a conflict of interest and refuses to make application"). "R.C. 305.14 confers power upon the common pleas court to authorize the appointment of legal counsel other than the prosecuting attorney to represent a county board or officer * * * where to do so is in the best interests of the county." Id. at 465.

{¶ 29} Second, we have held that when statutory provisions confer jurisdiction on a court to approve the appointment of an official but fail to specify that the court has further jurisdiction over the appointment, the court has the authority to determine whether the continued appointment of the official is necessary, and upon determining that it is no longer necessary, it can order the official's discharge. *State ex rel. Diehl v. Colwell* (1931), 123 Ohio St. 535, 176 N.E. 117 ("*Diehl I*"). In *Diehl I*, the pertinent statutes, G.C. 10070, 10071, and 10072, now R.C. 1717.06 and 1717.07, authorized county humane societies to appoint agents for the purpose of prosecuting any person guilty of an act of cruelty to persons or animals, with the appointment to be approved by the probate judge if the society exists outside a municipal corporation, and once approved, the agents would be paid a monthly salary by the board of county commissioners. A probate judge had approved the appointment of a humane officer by the county humane society, but approximately a year and a half later, a successor probate judge revoked the appointment and abolished the office. After the humane officer continued in his appointed office, the prosecuting attorney instituted a quo warranto action seeking to oust him from the office.

**{¶ 30}** In *Diehl I*, we rejected the argument that because the statutory authority conferred on the probate court is restricted to a determination of whether there is a necessity for the appointment of the humane society agent in the first instance, the court is vested with no further power once it approves the appointment:

**{¶ 31}** "However, while the term 'appoint' is used of the selection by the humane society, the approval of the * * * probate judge under these statutes certainly possesses greater vitality than a mere confirmation. No compensation can be paid the agent until after approval of the appointment. This is the specific provision of Section 10072 [now R.C. 1717.07]. The agent cannot make an arrest until his appointment is approved. Section 10065. * * * Since the approval is necessary before the agent can perform his most important function, or draw a cent of salary, evidently the Legislature contemplated that, while the selection is to be made by the society, it is the approval of the probate judge * * * which gives vitality to the selection and really establishes the function.

**{¶ 32}** "* * * It is not logical that [this] power [to approve the appointment] should be limited to the determination of the necessity at the time of approval only. *In the absence of limitation, the power to establish naturally includes the power to terminate the function. Hence we hold that the power given the probate judge* under sections 10071 and 10072, General Code [now R.C. 1717.06 and 1717.07], *to determine whether there is a necessity for the appointment, is a power which exists after, as well as prior, to the approval of the officer.*" (Emphasis added.) 123 Ohio St. at 540-542, 176 N.E. 117.

**{¶ 33}** Similarly, based on *Diehl I*, the mere fact that R.C. 305.14(A) does not specify that the common pleas court that approved the joint application to authorize the board to employ special counsel is authorized to terminate the authorization would not preclude the court from determining whether it remains in the best interest of the county to continue the employment of special counsel on

the riverfront-development project when the successor prosecuting attorney indicates that he no longer consents to that authorization. As in *Diehl I*, the board's appointment of special counsel pursuant to a joint application under R.C. 305.14(A) has no viability until the common pleas court approves the application, and special counsel cannot be paid until the approval occurs. Therefore, the court's power to terminate the authorization for the board of county commissioners to employ special counsel would be included in its power to initially authorize the employment. This result is consistent with the general axiom that the "power of removal is regarded as incident to the power of appointment." *State ex rel. Minor v. Eschen* (1995), 74 Ohio St.3d 134, 139, 656 N.E.2d 940.

{¶ 34} Third, our precedent cited by the board does not require a different result. These cases involve the initial appointment of special counsel rather than the common pleas court's authority to terminate a previously approved appointment. See *State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24 (common pleas court judge lacked statutory or inherent authority to appoint special counsel to represent him in a habeas corpus case when neither the prosecuting attorney nor the board of county commissioners had applied for the appointment of special counsel to represent the judge and no conflict of interest precluded the prosecutor from representing the judge); *Sartini*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584 (common pleas court lacked authority to order the county to pay for outside counsel when no joint application for the appointment had been filed under R.C. 305.14(A) and the court had already determined that any potential conflict of interest on the part of the prosecuting attorney had been waived); *State ex rel. Jefferson Cty. Children Servs. Bd. v. Hallock* (1986), 28 Ohio St.3d 179, 182, 28 OBR 269, 502 N.E.2d 1036 (juvenile court lacked authority to prohibit special counsel from representing children services board before it because common pleas court had authorized

employment of special counsel because of the prosecutor's conflict of interest). They are thus distinguishable.

**{¶ 35}** Fourth, the mere fact that the common pleas court and its judges did not provide notice to the board of county commissioners or its special counsel of the ex parte proceeding in which the prosecuting attorney requested termination of the order authorizing the employment of special counsel, while troubling and potentially remediable by appeal, did not patently and unambiguously divest the court and its judges of jurisdiction to terminate the employment. In *State ex rel. Diehl v. Colwell*, 124 Ohio St. 329, 178 N.E. 312 ("*Diehl II*"), we held that claims that the successor probate court judge's revocation of the appointment of the humane officer that had been approved by his predecessor was improper because of a lack of notice of the proceeding or journal entry to the officer, the humane society, and the board of county commissioners did not warrant modifying the holding of *Diehl I* that the revocation was effective and that the official should be ousted based on the successor judge's revocation order. We have similarly held that extraordinary relief in prohibition is not available to raise claims of lack of notice of the hearing or of the judgment. See *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 14; *State ex rel. Ahmed v. Costine*, 103 Ohio St.3d 166, 2004-Ohio-4756, 814 N.E.2d 865, ¶ 5.

**{¶ 36}** Finally, the board's claims about the improper assignment of the judges who executed the termination order or the res judicata effect of the 2002 entry authorizing the appointment of special counsel are not claims that patently and unambiguously divest the common pleas court and its judges of jurisdiction to enter the termination order. *Keith v. Bobby*, 117 Ohio St.3d 470, 2008-Ohio-1443, 884 N.E.2d 1067, ¶ 14 (claim of improper assignment of a judge cannot be raised in an extraordinary-writ action because party had adequate remedy by appeal to raise it); *McGhan v. Vettel*, 122 Ohio St.3d 227, 2009-Ohio-2884, 909

N.E.2d 1279, ¶ 29, quoting *State ex rel. Soukup v. Celebrezze* (1998), 83 Ohio St.3d 549, 550, 700 N.E.2d 1278 (" '*res judicata* is not a basis for prohibition because it does not divest a trial court of jurisdiction to decide its applicability and it can be raised adequately by postjudgment appeal' ").

{¶ 37} Therefore, the common pleas court and its judges did not patently and unambiguously lack jurisdiction to terminate the December 2002 order approving the joint application of the then prosecuting attorney and the board of county commissioners for the board to employ special counsel. The court's precedent in *Diehl I and II* arguably authorized the court's order terminating the appointment and employment of special counsel. Like those cases, the order terminating the appointment was made by a successor judge in an ex parte proceeding under statutory provisions that required court approval for the appointment but did not specify continuing authority for the court to revoke that approval and terminate the appointment.

### III. Conclusion

{¶ 38} "In the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party contesting that jurisdiction has an adequate remedy by appeal." *State ex rel. Plant v. Cosgrove*, 119 Ohio St.3d 264, 2008-Ohio-3838, 893 N.E.2d 485, ¶ 5. Because the common pleas court and its judges did not patently and unambiguously lack jurisdiction to issue the order terminating the board's employment of special counsel, the board had an adequate remedy by a timely appeal from that order to raise its claims. The mere fact that this remedy may no longer be available because the board failed to timely pursue it does not entitle it to the requested extraordinary relief in prohibition. *State ex rel. Estate of Hards v. Klammer*, 110 Ohio St.3d 104, 2006-Ohio-3670, 850 N.E.2d 1197, ¶ 15. Therefore, we deny the writ because the board of county commissioners has not established its entitlement to the requested extraordinary relief.

**{¶ 39}** By so holding, " '[w]e need not rule on the merits of [the board's jurisdictional claims], because our duty is limited to determining whether jurisdiction is patently and unambiguously lacking.' " *Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 45, quoting *State ex rel. Florence v. Zitter*, 106 Ohio St.3d 87, 2005-Ohio-3804, 831 N.E.2d 1003, ¶ 28. This conclusion is consistent with our duty not to issue advisory opinions as well as " 'the cardinal principle of judicial restraint–if it is not necessary to decide more, it is necessary not to decide more.' " *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 51, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Adm.* (C.A.D.C.2004), 362 F.3d 786, 799 (Roberts, J., concurring in part and in judgment).

Writ denied.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

David A. Pepper and Todd B. Portune, for relator.

Porter, Wright, Morris & Arthur, L.L.P., Mark E. Elsener, Kathleen M. Trafford, and Michael A. Wehrkamp, for respondents Hamilton County Court of Common Pleas and its judges.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Thomas E. Grossmann and Colleen M. McCafferty, Assistant Prosecuting Attorneys, for intervening respondent Joseph T. Deters.

Peck, Shaffer & Williams, L.L.P., and Thomas A. Luebbers, urging granting of the writ for amicus curiae County Commissioners Association of Ohio.

Ron O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr., First Assistant, Civil Division, urging denial of the writ for amicus curiae Ohio Prosecuting Attorneys Association.

_____