TOROK ET AL., APPELLEES, *v.* JONES ET AL., APPELLANTS.

[Cite as Torok *v.* Jones (1983), 5 Ohio St. 3d 31.]

(No. 82-567—Decided May 18, 1983.)

---

[1] The appellants are Phillip G. Rock, Thomas Zaratsian and Olean E. Jones, executrix of the estate of Royce Jones. Royce Jones was one of the defendants; however, his death necessitated the substitution of the executrix of his estate as a party.

32

*Mr. David H. Ferguson,* for appellees.
*Neman & Graves Co., L.P.A.,* and *Mr. James R. Graves,* for appellants.

HOLMES, J. Appellants present this court with three arguments why the judgments below should be reversed.

First, appellants argue that the six-month limitation contained in the zoning permits is invalid. Essentially, appellants assert that state enabling statutes do not authorize limitations such as that contained in Section 10.6 of the Green Township zoning ordinance.[2]

A township's authority to enact zoning ordinances is not inherent, nor does it derive from a constitutional provision. Rather, this authority is dependent upon a grant by the General Assembly. *Yorkavitz* v. *Bd. of Trustees* (1957), 166 Ohio St. 349 [2 O.O.2d 255]. R.C. Chapter 519 does not specifically authorize townships to limit zoning permits to six-months' duration. However, there is nothing in the Revised Code which could be reasonably construed as disapproving of such a provision. In fact, R.C. 519.16 provides that township zoning is to be regulated by a system of zoning certificates. In the absence of contrary direction from the General Assembly, a zoning or-

---

[2] Section 10.6 of the Green Township zoning ordinance reads:

"Zoning permits shall be effective for six (6) months. If construction is not started within that period, the permit is automatically cancelled. However, a permit holder may renew the permit without an additional fee by applying to the Zoning Inspector, provided the original application has not been invalidated by changes in the zoning regulations."

dinance provision, which limits the life of a zoning permit to six months, is a reasonable exercise of the power to zone contained in R.C. Chapter 519.

Appellants' next assertion is that the courts below applied the incorrect standard to determine whether they had established a lawful nonconforming use.[3] The courts below applied the common-law standard which requires a showing that a substantial nonconforming use of the property has been made. *Smith* v. *Juillerat* (1954), 161 Ohio St. 424 [53 O.O. 340]. Appellants argue that a less stringent test, contained in the Green Township zoning ordinance, should have been applied. Section 8.5[4] of that ordinance allows the completion of any building, which would be a nonconforming use, when construction had been commenced prior to the effective date of the ordinance.

Even assuming Section 8.5 applies to amendments as well as the initial passage of the zoning ordinance, appellants have failed to prove that they are entitled to its protection. In order to fall under the coverage of Section 8.5, construction must have begun before the effective date of the amendment. Here, the amendment became effective May 24, 1980. Appellants did not begin construction at either site until November 10, 1980. Consequently, the courts below did not err in refusing to apply the standard in Section 8.5.

Lastly, appellants argue that an application of the amended version of the zoning deprives them of vested property rights. For the reasons that follow, we disagree.

In *Smith* v. *Juillerat, supra,* this court faced a similar situation. There, the property owner wished to strip mine his land. Prior to the adoption of the local zoning ordinance, which prohibited strip mining, the land owner had expended money in preparation for mining. Nevertheless, this court held that a nonconforming use had not been established, stating:

"Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property."

Likewise, we hold that a property owner fails to acquire a vested right to complete construction and fails to establish a nonconforming use under a township zoning resolution where there has been no substantial change of position, or expenditures, or no significant incurrence of obligations in

---

[3] According to R.C. 519.19, townships may not exclude valid nonconforming uses.

[4] Section 8.5 of the Green Township zoning ordinance reads:

"Any partially completed building, the actual construction of which has commenced on or before the effective date of this Resolution, which building or its intended use when completed, would not conform with the provisions of this Resolution for the district in which it is located, may be completed and used as a non-conforming use only for the purpose for which it was originally designed, provided that the building is completed and/or put to use within two (2) years after adoption of this Resolution."

reliance upon the zoning permit. Here, appellants did not make a substantial nonconforming use of their property prior to the expiration of their zoning permits. At the Melanie Drive location, some work was done prior to the expiration of the permit; however, it was less than one-tenth of one percent of the total anticipated cost of construction at that location. At the Olean Avenue site, the only construction occurred after both the expiration of the zoning permits and the effective date of the amendments to the ordinance. This construction contravened the zoning ordinance and could not serve as a basis for establishing a nonconforming use. Accordingly, we agree with the courts below that here there was not shown to be a substantial nonconforming use of the property.

Additionally, appellants' reliance upon *Gibson* v. *Oberlin* (1960), 171 Ohio St. 1 [12 O.O.2d 1], is misplaced. In *Gibson,* this court held that a building permit could not be denied because the pending enactment of a zoning ordinance would make the anticipated use unlawful. If the use was lawful at the time of an application for a building permit, then the applicant was entitled to one.

Nothing in the record here suggests that appellants were in any way denied a zoning permit because of the imminent amendment to the township zoning ordinance. On the contrary, appellants were granted zoning permits for each parcel. They had nearly five months for one parcel, and more for the other, to establish a valid nonconforming use. That they failed to do so is not evidence that they were somehow denied such an opportunity by the appellees.

Based upon the foregoing, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, LOCHER and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., and W. BROWN, J., concur in judgment only.

C. BROWN, J., dissents.

CLIFFORD F. BROWN, J., dissenting. I dissent because the appellants have a right to complete the two buildings under the permits validly issued them. The six-month expiration provision contained in the zoning permits is invalid because the enabling law for township zoning, R.C. Chapter 519, and more particularly R.C. 519.19,[5] nowhere expressly authorizes the board of

_____

[5] R.C. 519.19, nonconforming use of buildings and land not affected by zoning, provides:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment * * *. The

township trustees to cancel zoning permits six months after their issuance. Zoning power in townships is that delegated by the General Assembly and is limited to that which is *expressly delegated* to townships. *Yorkavitz* v. *Bd. of Twp. Trustees* (1957), 166 Ohio St. 349, 351 [2 O.O.2d 255]. Section 10.6 of the Green Township zoning ordinance was amended April 23, 1980, to be effective May 24, 1980, and restricted the validity of zoning permits to six months. See footnote 2. The section was not effective until after the date of issuance of the two permits (April 23 and May 13, 1980) to the appellants. Section 10.6 is arbitrary, unreasonable, capricious and unconstitutionally burdensome on defendants' vested property rights, in violation of their substantive due process rights, especially where construction had begun on the Melanie Drive property within the six-month period. *Teegardin* v. *Foley* (1957), 166 Ohio St. 449 [2 O.O.2d 462]; *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535 [26 O.O. 116]; and *Akron* v. *Chapman* (1953), 160 Ohio St. 382 [52 O.O. 242].

In addition, the courts below applied an incorrect standard to determine whether defendants had established a lawful nonconforming use by holding that the common-law standard required defendants to show a substantial nonconforming use of the property had been made. The common-law standard of substantial use was inapplicable, however, because Green Township had adopted a lesser standard of "actual construction" as expressly stated in Section 8.5 of the Green Township zoning ordinance. See footnote 4.

If Section 8.5 is construed to require actual construction by defendants before the effective date of the amendment of Section 10.6, May 24, 1980, which is no more than thirty-one days after the two permits were issued (eleven days for one permit), it is contrary to our holdings in *Gibson* v. *Oberlin* (1960), 171 Ohio St. 1 [12 O.O.2d 1], and *Smith* v. *Juillerat* (1954), 161 Ohio St. 424 [53 O.O. 340]. These two cases stand for the proposition that a permit holder must be afforded a reasonable opportunity to establish a nonconforming use in order to safeguard his vested property rights as a permit holder. Neither thirty-one days nor eleven days constitute a "reasonable opportunity." Section 10.6 authorizes retrospective "invalidation" of lawfully issued zoning permits through changes in the zoning regulations.

This case displays another instance among many in Ohio where zoning laws are enacted or changed to prohibit the development of property, motivated by spite and freezing the free use and alienability of property. We are now a far cry from the main purpose of zoning, namely, preserving the "character of the neighborhood," as was so glowingly explained in that first landmark zoning case, *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365, 394.

---

board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution."