OPINION
Plaintiffs-appellants, Board of Warren County Commissioners and Tom and Lori Mueller,[1] appeal the decision of the Warren County Court of Common Pleas denying their request for injunctive relief against defendant-appellee, Nextel Communications ("appellee"). We affirm.
Appellee is a telecommunications company doing business in Ohio. Appellee sought to build a telecommunications tower on a 5.583 acre tract of land in Turtlecreek Township, Warren County, Ohio which appellee leased from Richard Ledbetter ("Ledbetter property"). The Ledbetter property is adjacent to the Muellers' property. On June 1, 1995, appellee applied for building permits to construct the telecommunications tower ("the tower") and an equipment building. On June 7, 1995 and June 14, 1995, respectively, the Warren County Building Department ("WCBD") issued building permits for the tower and equipment building. These permits were effective for a one-year period.
On May 7, 1996, appellee requested from the WCBD a six-month extension of the permits. At this time, appellee had yet to begin construction of the tower and building. Tom Fealy, Building Inspector, granted the extension on May 13, 1996, extending the building permits until December 14, 1996. On September 13, 1996, appellee requested another six-month extension, which was granted by Jerry Spurling, Chief Building Official, on September 16, 1996. By this second extension, the permits were effective until June 14, 1997. Appellee still had not begun construction when the second extension was granted.
On October 24, 1996, appellee had the site of the tower surveyed and staked out. On October 31, 1996, appellee awarded a contract to Communications Tower Specialists, L.L.P., ("CTS") for construction of the tower, whereby appellee would pay CTS $125,559 to build the tower. On that same day, R.C. 303.21.1 was amended to impose additional restrictions and requirements upon the building of telecommunications towers. Primary among these new requirements was that extensive notification of any proposed towers was to be given to surrounding communities and local authorities.
On November 5, 1996, appellee directed CTS to begin construction, and by December 13, 1996, CTS had completed 7.78 percent of the work valued at $9,769.58. This work comprised a one-third completion of the access road to the tower and the purchase of an insurance policy, meetings, and bringing equipment to the site. The following day, CTS completed more work, raising the completed cost of the job to $13,769.58. As of December 31, 1996, the completed cost of the work performed was $53,223.
On January 3, 1997, appellee received a letter from the Muellers' attorney advising appellee of a claimed violation of township zoning regulations. On January 8, 1997, the WCBD sent a letter to appellee stating that the original permits had expired, but no mention was made of the extensions. On January 14, 1997, the Warren County Prosecutor ("Prosecutor") sent a letter to appellee advising that the first extension had expired. No mention was made of the second extension granted to appellee.
On February 21, 1997, the Prosecutor, on behalf of the Commissioners, filed a complaint in the trial court seeking a declaratory ruling that R.C. 303.21.1, as amended, was applicable to the tower's construction and an injunction against any further construction. The Commissioners, through the Prosecutor, also filed a motion for a temporary restraining order ("TRO"). On February 24, 1997, forty-four local property owners filed a motion to intervene as additional plaintiffs. Appellee filed papers opposing the motion for a TRO. On April 1, 1997, the Muellers filed a complaint to intervene as plaintiffs against appellee.
The court held a hearing at which the parties presented evidence and arguments concerning the requested preliminary injunction. On May 19, 1997, the trial court rendered its decision, finding that appellee had been issued a valid permit and extensions and denying the preliminary injunction. The trial court then heard the parties' arguments concerning a permanent injunction. On August 14, 1997, the trial court denied the requested declaratory relief and permanent injunction and dismissed appellants' complaints.
Appellants appeal, raising two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANTS DECLARATORY AND OR [sic] INJUNCTIVE RELIEF BECAUSE OHIO REV. CODE § 303. 211 AS AMENDED APPLIES BECAUSE DEFENDANT DID NOT HAVE A VALID BUILDING PERMIT ON DECEMBER 14, 1996.
In their first assignment of error, appellants argue that appellee was not granted a valid building permit pursuant to R.C. 3791.04(C), because the statute entitled appellee to only one extension. Appellee counters that R.C. 3791.04(C) allows for a twelve-month extension under the circumstances presented in this case. Appellee further asserts that, although the WCBD may not have strictly followed the language of R.C. 3791.04(C), appellee relied upon the actions of the WCBD and should not be penalized for such reliance.
The granting of declaratory and injunctive relief are matters within the discretion of the trial court. Landen Farm CommunityServ. Assn. v. Schube (1992), 78 Ohio App.3d 231, 234, jurisdictional motion overruled (1992), 64 Ohio St.3d 1418; DanisClarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist. (1995),73 Ohio St.3d 590, paragraph three of the syllabus. In order to obtain declaratory relief, a party must prove three elements: (1) that a real controversy exists between the parties, (2) that the controversy is justiciable in character, and (3) that the situation is one in which speedy relief is necessary to preserve the rights of the parties. Buckeye Quality Care Centers, Inc. v.Fletcher (1988), 48 Ohio App.3d 150, appeal dismissed (1988),39 Ohio St.3d 703. In order to obtain a permanent injunction, a party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists. DaytonMetro. Hous. v. Human Rel. Council (1992), 81 Ohio App.3d 436,442, jurisdictional motion overruled (1992), 65 Ohio St.3d 1457. A decision by the trial court to deny declaratory relief or an injunction will not be reversed unless shown to be arbitrary, unreasonable, or unconscionable. Danis Clarkco Landfill at paragraph three of the syllabus; Bilyeu v. Motorist Mut. Ins. Co.
(1973), 36 Ohio St.2d 35, 37.
R.C. 3791.04 governs the procedures for submitting building plans for approval and the granting of building permits. R.C.3791.04(C) provides:
 The approval of plans or drawing and specifications or data pursuant to this section is in valid if construction, alteration, or other work upon the building has not commenced within twelve months of the approval of the plans or drawings and specifications. One extension shall be granted for an additional twelve-month period if requested by the owner at least ten days in advance of the expiration of the permit and upon payment of a fee not to exceed one hundred dollars. If in the course of construction, work is delayed or suspended for more than six months, the approval of plans or drawings and specifications or data is invalid. Two extensions shall be granted for six months each if requested by the owner at least ten days in advance of the expiration of the permit and upon payment of a fee for each extension of not more than one hundred dollars. Before any work may continue on the construction, erection, alteration, or equipment of any building for which the approval is invalid, the owner of the building shall resubmit the plans or drawings and specifications for approval pursuant to this section.
Appellants assert that the second extension of the building permit given to appellee was invalid, because approval of the extension did not conform to R.C. 3791.04(C). Namely, appellants argue that appellee was entitled to seek only a single twelve-month extension under the statute, not two six-month extensions. Following this argument, appellants contend that appellee's request for the first extension exhausted its right to any future extensions.
Appellee responds by pointing out that the WCBD issued the permit extensions, and it was incumbent upon that authority to ensure that the mandates of the statute were followed. Appellee further argues that, in this case, the result of the two extensions granted is the same as a single twelve-month extension. Appellee asserts that appellants' arguments are hypertechnical distinctions asserted solely because appellants disagree with the decisions of the WCBD.
When a statute is clear and unambiguous on its face, the statute should only be applied by the courts, and not interpreted.Roxane Laboratories, Inc. v. Tracy (1996), 75 Ohio St.3d 125,127. Nonetheless, in its application, the statute should be construed according to the ordinary meaning of the words used, and it should produce the result intended by the statute's evident purpose. Ohio Assn. of Pub. School Employees v. Twin Valley LocalSchool Dist. (1983), 6 Ohio St.3d 178. When the effect of a statute or ordinance will restrain the exercise of trade or business or restrict the use of private property, the statute must be strictly construed and exceptions from the restrictions must be liberally construed. Rotellini v. West Carrollton Bd. of ZoningAppeals (1989), 64 Ohio App.3d 17.
It is clear that R.C. 3791.04(C) provides that, when construction has yet to begin, the party erecting the structure may request, and shall be granted, a twelve-month extension of the building permit. During construction, the permit can be extended for twelve months, only it must be in done through two six-month extensions. Thus, it is clear that the evident purpose of R.C.3791.04(C) is to grant extensions for up to twelve months when necessary. We recognize that the statute does state that one twelve-month extension may be granted when construction has not taken place, but, adopting appellants' interpretation of the statute would nullify the right to a twelve-month extension in general. When the actions of the parties and the local authorities result in a twelve-month extension, the purpose of R.C. 3791.04(C) has been achieved, even though the parties may not have strictly followed the technical wording of the statute.
We find such a reading of R.C. 3791.04(C) even more compelling in light of the facts of the case at bar, where the two county officials who approved the permit extensions testified before the trial court and stated that they had power to grant the permit extension. Tom Fealy, a Planning Examiner for Warren County, approved the first permit extension. He testified that he believed that he had the power to grant a six-month extension as requested by appellee. Jerry Spurling, the Chief Building Official at the WCBD, approved the second extension. He stated that he was unaware of any prior extensions, even though the letter from appellee requesting the extension was clearly written after the initial permit had expired and mentioned that an earlier extension had been granted. He also testified that, at the time he granted the second extension, there were no outstanding zoning violations.
Based upon the facts and circumstances presented, the actions of the WCBD did not contradict the language of R.C. 3791.04(C). The WCBD granted the equivalent of a twelve-month permit extension, and, therefore, the WCBD fulfilled the purpose and spirit of R.C. 3791.04(C). Accordingly, appellants' first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DECLARATORY AND OR [sic] INJUNCTIVE RELIEF BECAUSE OHIO REV. CODE § 303.21.1 AS AMENDED APPLIES BECAUSE DEFENDANT HAD NO VESTED RIGHTS SINCE IT HAD NOT COMMENCED CONSTRUCTION AS DEFINED BY THE OHIO SUPREME COURT IN TOROK V. JONES.
In their second assignment of error, appellants argue that appellee had failed to establish a substantial nonconforming use upon the Ledbetter property prior to the amendment of R.C. 303.21.1. Appellants assert that appellee's construction of the tower was subject to the amended version of R.C. 303.21.1 which imposes extensive notification requirements.
R.C. 303.21.1 governs the zoning powers given to local authorities over a variety of state and federally regulated activities. R.C. 303.21.1, as amended on October 31, 1996, provides, in pertinent part:
 (B)(3) Any person who plans to construct a telecommunications tower in an area subject to county zoning regulations shall provide both of the following by certified mail:
 (a) Written notice to the board of township trustees of the township in which the tower is proposed to be constructed and to each owner of property, as shown on the county auditor's cur rent tax list, whose land is contiguous to or directly across a street or roadway from the property on which the tower is proposed to be constructed, stating all of the following in clear and concise language:
(i) The person's intent to construct the tower;
 (ii) A description of the property sufficient to identify the proposed location;
 (iii) That, no later than fifteen days after the date of mailing of the notice, such board of township trustees or any such property owner may give written notice to the board of county commissioners requesting that sections 303.01 to 303.25 of the Revised Code apply to the pro posed location of the tower as provided under division (B)(4) of this section.
* * *
 (b) Written notice to the board of county commissioners of the information specified in divisions (B)(3)(a)(i) and (ii) of this section. The notice to the board shall include verification that the person has complied with division (B)(3)(a) of this section.
Prior to the October 31, 1996 amendment of this section, no such notice requirements were imposed upon individuals seeking to construct telecommunications towers. Appellants assert that the amended version of R.C. 303.21.1 applies to appellee's tower because the building permit extensions granted were invalid under R.C. 3791.04(C). Since we have determined that, in fact, appellee did have a valid permit extension under R.C. 3791.04(C), we must determine whether R.C. 303.21.1, as amended, is applicable to appellee's construction of the tower.
By its own terms, R.C. 303.21.1, as amended, exempts projects which have proceeded past the planning stages by its effective date, October 31, 1996. R.C. 303.21.1 is applicable to "[a]ny per son who plans to construct a telecommunications tower in an area subject to county zoning regulations." (Emphasis added.) Thus, if before October 31, 1996, a person building such a tower has incurred expenses and obligations that are more substantial than mere preparation, R.C. 303.21.1 is inapplicable.
Even though a property owner may hold valid permits to establish a nonconforming use, that property owner may still be subject to amendments in the zoning regulations or the Revised Code:
 A property owner fails to acquire a vested right to complete construction and fails to establish a nonconforming use under a township zoning resolution where there has been no substantial change of position, or expenditures, or no significant incurrence of obligations in reliance upon the zoning permit.
Torok v. Jones (1983), 5 Ohio St.3d 31, paragraph two of the syllabus. Thus, if a property owner is only preparing to begin construction, the property owner has not acquired any vested rights, and the property owner is not deprived of any use by the operation of an amended zoning regulation which prohibits or restricts his intended use of the property. Id. at 33, citing Smith v. Juillerat (1954), 161 Ohio St. 424, paragraph four of the syllabus. Nonetheless, when a property owner is granted a permit which allows the property owner to establish a nonconforming use, the property owner is vested with the right to establish the nonconforming use under the law as it existed when the permit was granted. O'Brien v. Columbus (Feb. 6, 1990), Franklin App. No. 89AP-877, unreported, jurisdictional motion overruled (1990), 52 Ohio St.3d 704.
"The scope of the applicable vested right encompasses not only the building permit, but also the construction process which is a prerequisite to establishing a nonconforming use." Id. This vested right exists only so long as the building permit remains valid. If, at the time the permit expires, the property owner has failed to make substantial nonconforming use of the property, any right to do so expires. Id.
Although appellants are correct that appellee had yet to begin actual construction of the tower by October 31, 1996, appellants' reliance on this fact alone demonstrates a misreading of the law. Under Torok, the court's focus is not solely upon whether the property owner has started actual construction upon the property, but the court must also inquire as to whether the owner has changed his position, expended significant time, effort or money, or incurred significant obligations. Torok at paragraph two of the syllabus.
The evidence presented to the trial court demonstrated that appellee had incurred significant obligations and made substantial expenditures of time and money. Appellee had engaged in extensive bidding and negotiations in seeking a firm to construct the tower, in securing the lease to the Ledbetter property, and in surveying and preparing the construction site. In addition, appellee had secured from the WCBD the required permits to build the tower. Therefore, we find that appellee had taken action beyond mere preparation and planning, and that appellee had established a nonconforming use upon the Ledbetter property prior to the amendment of R.C. 303.21.1. Thus, R.C. 303.21.1, as amended, is inapplicable to the case at bar.
Because appellee held a valid building permit extension and had established a substantial nonconforming use upon the Ledbetter property, the trial court did not abuse its discretion by denying appellants' request for declaratory and injunctive relief and by dismissing appellants' complaints. Accordingly, appellants' second assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] When referred to together, the Board of Warren County Commissioners and Tom and Lori Mueller will be referred to as "appellants." When referred to separately, the Board of Warren County Commissioners will be referred to as "the Commissioners" and Tom and Lori Mueller will be referred to as "the Muellers."