[Cite as *Campbell v. Smith*, 2011-Ohio-3002.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

SCOTT CAMPBELL,
ZONING INSPECTOR,

      PLAINTIFF-APPELLEE,                  CASE NO. 1-10-79

      v.

DAVID O. SMITH, ET AL.,                **O P I N I O N**

      DEFENDANTS-APPELLANTS.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2009 0510**

**Judgment Affirmed**

**Date of Decision:   June 20, 2011**

APPEARANCES:

    *Richard E. Siferd and Brian J. Vennekotter* **for Appellants**

    *Michael A. Rumer* **for Appellee**

**PRESTON, J.**

{¶1} Defendants-appellants, David and Marsha Smith (hereinafter "the Smiths"), appeal the Allen County Court of Common Pleas' judgment entry permanently enjoining them from maintaining the nuisance at their property and ordering them to remove junk vehicles and other debris from their property. For the reasons that follow, we affirm.

{¶2} This case concerns several zoning violations at 1601 Reservoir Road in Bath Township, Allen County, Ohio. (Sept. 13, 2010 Tr. at 7-8). Prior to 1986, Dick and Marcia Mauk owned the property and used it as the location for The Mauk Brothers, a business operated by Dick and Gene Mauk. (Sept. 13, 2010 Tr. at 96-97, 100). The property was zoned R-1, residential district, until 1984, when the Mauks made an application to have the property re-zoned to B-2, general business district, so the property could be used for the business. (Id. at 98-99). Sometime in 1983, bankruptcy proceedings were initiated, which involved the subject property. (Id. at 98). On July 29, 1986, the Smiths obtained the property from the bankruptcy trustee. (P's Ex. 4); (Sept. 13, 2010 Tr. at 120).

{¶3} In May 2004, plaintiff-appellee, Scott Campbell, the Bath Township Zoning Inspector, sent the Smiths a letter requesting that they clean up junk and debris on their property. (Id. at 72). Some marginal improvements to the property

were made, so Campbell sent another letter to the Smiths in March 2006 requesting that they clean up junk and debris on their property. (Id.).

{¶4} On June 3, 2006, Campbell wrote another letter to the Smiths indicating that "all debris, junk, vehicles, trailers, and general trash must be removed from the property as viewed from the road right away around all buildings and main residential structure" within thirty (30) days. (Ex. H); (Sept. 13, 2010 Tr. at 93).  Later in June 2006, Campbell turned the matter over to Allen County Sheriff's Deputy Feldner for enforcement of the Zoning Resolution. (Sept. 13, 2010 Tr. at 59, 73).  Deputy Feldner contacted Mr. Smith in August 2006 and visited the property on August 16, 2006; however, Mr. Smith would not allow Deputy Feldner entrance into the fenced-in portion of the property. (Id. at 60-63).

{¶5} On June 17, 2008, the Bath Township Trustees held a public hearing relative to the Smiths' zoning violations and the storing of junk motor vehicles on their property. (Id. at 20).  Mr. Smith was present at this hearing and asked the trustees for an extension until December 16, 2008 to clean up the property. (Id.). At the November 14, 2008 trustees' meeting, Mr. Smith asked for and was granted a further extension until April 1, 2009. (Id.).

{¶6} On April 21, 2009, the Bath Township Trustees passed resolution no. 4-21-09-2 declaring the property at 1601 Reservoir Road a public nuisance and

authorizing the Bath Township Zoning Inspector to proceed with legal action to bring the property into compliance with the Zoning Resolution. (P's Ex. 1).

**{¶7}** On May 22, 2009, Campbell filed a complaint pursuant to R.C. 519.24 seeking to permanently enjoin the Smiths from violating the Bath Township Zoning Resolution and maintaining the nuisance on their property. (Doc. No. 1).

**{¶8}** On June 24, 2009, the Smiths filed a motion for an additional thirty (30) days to plead or otherwise respond to the complaint, which the trial court granted. (Doc. Nos. 5-6).

**{¶9}** On July 23, 2009, the Smiths filed an answer denying the substantive allegations of the complaint and asserting, as an affirmative defense, that their property is a duly licensed junk yard. (Doc. No. 7).

**{¶10}** On March 16, 2010, the Smiths filed a motion for summary judgment. (Doc. No. 12). On April 6, 2010, Campbell filed a memo in opposition. (Doc. No. 13). On April 13, 2010, the trial court denied the motion for summary judgment. (Doc. No. 16).

**{¶11}** On September 13, 2010, the matter proceeded to a bench trial. On November 4, 2010, the trial court: permanently enjoined the Smiths from violating the Bath Township Zoning Resolution and resolution no. 4-21-09-2; permanently enjoined the Smiths from keeping the nuisance (to wit: the junk vehicles and other debris) on their property; ordered the Smiths to remove the junk vehicles and other

debris within sixty (60) days; and granted the township the authority to remove the junk vehicles and other debris from the property in the event the Smiths failed to comply with the court's order. (Doc. No. 31).

{¶12} On December 3, 2010, the Smiths filed a notice of appeal. (Doc. No. 33). On December 7, 2010, the Smiths filed a motion to stay the trial court's judgment. (Doc. No. 36). On December 28, 2010, the trial court stayed its judgment pending appeal. (Doc. No. 38).

{¶13} The Smiths now appeal raising two assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ENFORCING THE ZONING RESOLUTION WHERE THE ZONING RESOLUTION IN QUESTION MUST BE STRICTLY CONSTRUED IN FAVOR OF THE LAND OWNER, AND IS PREEMPTED BY STATE LAW OR THERE WAS A PRIOR NON-CONFORMING USE OF THE PROPERTY.**

{¶14} In their first assignment of error, the Smiths argue that the trial court erred in its interpretation of the Bath Zoning Resolution. The Smiths further argue that state law governs this issue through the doctrine of preemption. Finally, the Smiths argue that the trial court erred by failing to find that their use of the land was a prior non-conforming use. We will address each of these arguments below.

A.     Junk Yards Are Not Allowed Under Bath Zoning Resolution, Section 6.18.

{¶15} With respect to their first argument, the Smiths specifically argue that the Bath Township Zoning Resolution does not actually prohibit junk yards; rather, Section 6.18 permits junk yards if they "conform to the provisions of R.C. 4737.05 to 4737.99 and 4738.01 to 4738.99." They further argue that the Zoning Resolution should be strictly construed since it limits land use, and as such, their junk yard is permissible under Section 6.18 of the Zoning Resolution.

{¶16} The interpretation of a zoning resolution presents a question of law reviewed de novo by an appellate court. See *Berry v. Liberty Township Bd. of Zoning Appeals* (Dec. 28, 1993), 3d Dist. No. 8-93-16, at *1. "Zoning Resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled." *Saunders v. Clark County Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 421 N.E.2d 152, citing *In re University Circle Inc.* (1978), 56 Ohio St.2d 180, 184, 383 N.E.2d 139; *Pepper Pike v. Landskroner* (1977), 53 Ohio App.2d 63, 76, 371 N.E.2d 579. Therefore, Zoning Resolutions must be strictly construed in favor of the property owner, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. *Saunders*, 66 Ohio St.2d at 261, citing *Davis v. Miller* (1955), 163 Ohio St. 91, 95, 126 N.E.2d 49; *State ex rel. Ice & Fuel Co. v. Kreuzweiser*

(1929), 120 Ohio St. 352, 166 N.E. 228; *State ex rel. Moore Oil v. Dauben* (1919), 99 Ohio St. 406, 124 N.E. 232, paragraph one of the syllabus. Nevertheless, "in determining the legislative intent of an ordinance, the provision to be construed should not be reviewed in isolation. Its meaning should be derived from a reading of the provision taken in the context of the entire ordinance." *In re University Circle Inc.* (1978), 56 Ohio St.2d at 184, citations omitted.

{¶17} The Bath Township Zoning Resolution was enacted in 1966 after voter approval on May 3, 1966, but the Zoning Resolution has since been amended several times, including on March 6, 1986 (eff. April 1986) and on August 15, 2006 (eff. September 2006). (Tr. at 70); (Exs. 2-3); (Campbell Aff. at ¶2). Both the 1986 and 2006 versions of the Zoning Resolution divide the township into eleven (11) districts. (Exs. 2-3, Art. 6.0). Both versions of the Zoning Resolution then provide separate Articles governing each district setting forth specific permissible uses for land in those districts. (Exs. 2-3). Section 6.3 in both versions of the Zoning Resolution provides, in pertinent part, that "[n]o building shall be erected, converted, or altered, nor shall any * * * land be used except for a purpose permitted in the district in which the * * * land is located, except as hereinafter provided." (Id.). Both versions of the Zoning Resolution also provide: "[a]ny use which is not specifically provided for nor specifically authorized by this Zoning Resolution shall be expressly prohibited unless such use

-7-

shall otherwise be authorized or permitted by the Board of Zoning Appeals, pursuant to the procedures contained herein." (P's Ex. 3, Section 7.5); (P's Ex. 2, Section 7.6). Junk yards are not listed as permitted uses for any of the eleven districts in either version of the Zoning Resolution. (P's Exs. 2-3). Nevertheless, Section 6.18 in both versions of the Zoning Resolution provides: "**Junk Yards (Automotive Graveyards), Motor Vehicle Salvage:** Junk yards shall conform to the provisions of Chapter 4737.01 to 4738.01 to 4738.99 of the **Ohio Revised Code** (license-fence-buffer)." (Id.) (emphasis in original).

{¶18} The Smith's interpretation of Section 6.18 is only tenable if it is inappropriately read in isolation. *In re University Circle Inc.*, 56 Ohio St.2d at 184, citations omitted. The Zoning Resolution was drafted in such a way as to expressly provide for those uses that were permissible in each district, and the Zoning Resolution further provides that land shall not be used except as specifically provided therein. Interpreting Section 6.18 as the Smiths interpret it is not only contrary to the Zoning Resolution's overall scheme but would lead to the absurd result that junk yards were permissible in all districts, including residential districts. "It is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result." *Mishr v. Poland Bd. of Zoning Appeals* (1996), 76 Ohio St.3d 238, 240, 667 N.E.2d 365, citing *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 384, 439, 481 N.E.2d

632; *Slater v. Cave* (1853), 3 Ohio St. 80, 83-84. The Bath Township Zoning Inspector offered a reasonable interpretation of Section 6.18 when he averred that Section 6.18 exists to govern junk yards that were in operation prior to the passage of the original Zoning Resolution. (See Campbell Aff. at ¶9). Section 6.18 also applies to those junk yards that were established under prior versions of the Zoning Resolution that permitted junk yards in specific districts. For example, Campbell testified that junk yards were a permissible use of land in manufacturing districts in 1977. (May 17-18, 2010 Tr. at 91). Therefore, we do not interpret Section 6.18 as an authorization of junk yards in all districts in perpetuity, as the Smiths interpret it; but rather, as a requirement for the continued operation of junk yards that were already in existence prior to 1966, when the original Zoning Resolution was enacted, and junk yards that were established as permissible uses of land under prior versions of the Zoning Resolution.

### B. Bath Zoning Resolution Does Not Conflict With R.C. 4737.07.

{¶19} The Smiths next argue that townships may not prohibit junk yards since R.C. 4737.07 allows municipalities, but not townships, to prohibit junk yards. Since Allen County issued them a license to operate a junk yard pursuant to R.C. 4737.07, the Smiths argue that junk yards are a matter of state law, which preempts Bath's Zoning Resolution.

Case No. 1-10-79

{¶20} A township's authority to enact zoning ordinances is not inherent, nor does it derive from a constitutional provision like municipalities; rather, the zoning power of a township is a police power delegated to the township by the General Assembly. *Torok v. Jones* (1983), 5 Ohio St.3d 31, 32, 91, 448 N.E.2d 819; *Yorkavitz v. Columbia Twp. Bd. of Trustees* (1957), 166 Ohio St. 349, 142 N.E.2d 655, paragraph one of the syllabus. See, also, *Dsuban v. Union Twp. Bd. of Zoning Appeals* (2000), 140 Ohio App.3d 602, 608, 748 N.E.2d 597. As such, "[t]he zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly." *Bd. of Bainbridge Twp. Trustees v. Funtime, Inc.* (1990), 55 Ohio St.3d 106, 563 N.E.2d 717, paragraph one of the syllabus.

{¶21} "[T]he General Assembly cannot be held to have delegated to township officials the authority to adopt zoning resolutions which are in contravention of general laws previously enacted by the General Assembly." *Yorkavitz*, 166 Ohio St. at 351. Consequently, "[a] zoning ordinance, rule or resolution which violates an explicit statutory command of the General Assembly is clearly preempted and is therefore invalid and unenforceable." *Newbury Twp. Bd. of Trustees v. Lomak Petroleum* (1992), 62 Ohio St.3d 387, 583 N.E.2d 302, paragraph one of the syllabus. "The test to determine whether a conflict exists between a township's zoning resolution and a general law of the state is 'whether

-10-

the ordinance permits or licenses that which the statute forbids or prohibits, and vice versa.'"[1] *Am. Outdoor Advertising Co., L.L.C. v. Franklin Twp. Bd. of Zoning Appeals*, 177 Ohio App.3d 131, 2008-Ohio-3063, 894 N.E.2d 78, ¶16, quoting *Fondessy Ents., Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 492 N.E.2d 797, paragraph two of the syllabus.  Whether a local zoning resolution conflicts with the general laws of Ohio is a question of law we review de novo. See *Smith Family Trust v. Hudson Bd. of Zoning and Building Appeals*, 9th Dist. No. 24471, 2009-Ohio-2557, ¶10; *State ex rel. O'Connor v. Davis* (2000), 139 Ohio App.3d 701, 704, 745 N.E.2d 494.

{¶22} R.C. 4737.07 provides, in pertinent part:

**No person shall operate and maintain a junk yard outside of a municipality * * * without first obtaining a license to do so from the county auditor of the county in which such junk yard is located or in which such junk yard is to be established. * * * If, after January 1, 1964, a junk yard is established within one thousand feet of the nearest edge of the right of way of a state or county highway or within three hundred feet of the nearest edge of the right of way of a township road, it shall be so located that the view thereof from such road is obscured by natural objects or a fence. If the yard is so obscured, the person operating or maintaining it shall be issued a license. * * ***

**\* \* \* If a junk yard is established after November 18, 1969, within one thousand feet of the nearest edge of the right of way**

---

[1] We note that this conflict test was developed by the Ohio Supreme Court in its jurisprudence relating to potential conflicts between a municipality's ordinance and state law, not a township Zoning Resolution and state law; nevertheless, this same test has been applied by The Court of Appeals in cases dealing with the latter as well. See, e.g., *Osnaburg Twp. Zoning Inspector v. Eslich Environmental, Inc.*, 5th Dist. No. 2008CA00026, 2008-Ohio-6671, ¶55; *Center Twp. Bd. of Twp. Trustees v. Valentine* (Nov. 9, 2000), 6th Dist. No. WD-99-065, at \*2; *Am. Outdoor Advertising Co., L.L.C.*, 2008-Ohio-3063, at ¶16.

**of an interstate or primary highway, it shall be so located that the view thereof from such highway is obscured by natural objects or a fence. If the yard is so obscured, the person operating or maintaining it shall be issued a license under this section. Nothing contained in this section shall be construed to relieve any person of his duty to comply with the provisions of ordinances enacted by municipal corporations regulating or prohibiting junk yards, including requirements to obtain a license under municipal ordinances. The requirement to obtain a license from the municipality under this section shall be in addition to regulations imposed and licenses required under municipal ordinances. No license shall be issued unless such yard accords with the provisions of this section. \* \* \***

{¶23} R.C. 519.02, on the other hand, "gives a local board of township trustees the authority to regulate land use within the township confines, and the power to divide the area into such districts or zones as the board determines are proper." *Lomak Petroleum*, 62 Ohio St.3d at 390; *Funtime*, 55 Ohio St.3d at 107. "A township's power to regulate may include the power to exclude a use." *Machnics v. Sloe*, 11th Dist. No. 2004-G-2554, 2005-Ohio-935, ¶51, appeal not allowed by *Machnics v. Sloe*, 106 Ohio St.3d 1484, 2005-Ohio-3978, 832 N.E.2d 737, citing *E. Fairfield Coal Co. v. Booth* (1957), 166 Ohio St. 379, 382, 143 N.E.2d 309.

{¶24} As an initial matter, we note that Bath Township's Zoning Resolution does not forbid or prohibit what R.C. 4737.07 permits or licenses on its face. Section 6.18 of the Bath Township Zoning Resolution provides that "[j]unk yards shall conform to the provisions of Chapter 4737.01 to 4738.01 to 4738.99 of

the Ohio Revised Code (license-fence-buffer)." (P's Exs. 2-3). Nevertheless, the Smiths assert that the conflict results because the Zoning Resolution no longer permits the establishment of *new* junk yards even though R.C. 4737.07 permits the licensure of junk yards. This argument lacks merit.

{¶25} The Ohio Attorney General has previously concluded that the duties of the county auditor to license junk yards in Chapter 4737 does not conflict with a township's ability to prohibit junk yards by adopting zoning resolutions under Chapter 519. 1969 Ohio Atty.Gen.Ops. No. 69-136. The opinion provides, in pertinent part:

> **There is nothing in Chapter 4737, Revised Code, which expressly refers to or conflicts with the provisions of Chapter 519, Revised Code. Considering the duties of the county auditor, it becomes apparent that the licensing power of the county auditor is designed basically as a revenue measure. In effect, the county auditor's licensing power presents an independent condition precedent to the establishment of a junk yard, which is in no way affected by a township's capacity to prohibit junk yards in certain areas by adopting Zoning Resolutions.**
>
> **It consequently becomes clear that the county auditor is authorized to issue a license for a junk yard under Chapter 4737, supra, if the application is proper, regardless of the existence of a township Zoning Resolution forbidding junk yards in the area described in the application. The responsibility lies with the applicant to ensure that there are no other restrictions which might prevent the establishment of the junk yard.**
>
> **\* \* \* [A] township's zoning regulation of junk yards does not conflict with a county auditor's power to license junk yards. Therefore, it is clear that the township's power to control junk yards through their Zoning Resolution is not affected by the**

**licensing power granted to county auditors in Chapter 4737, supra.**

**\* \* \* [A] township's zoning authority under Chapter 519, Revised Code, is not inconsistent with the requirement under Section 4737.07, Revised Code, of a license issued by the county auditor prior to the establishment of a junk yard. The county auditor's licensing power, with respect to junk yards, and the township's zoning authority are mutually independent and separately enforceable.**

{¶26} We agree with the Ohio Attorney General's conclusion that a county auditor's duty to license operators of junk yards found under R.C. 4737.07 is not in conflict with a township's authority to prohibit junk yards through local zoning resolutions enacted pursuant to Chapter 519. Rather, the landowner's compliance with local zoning regulations and state licensing present two independent criteria for the establishment of a junk yard. See *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 265, 510 N.E.2d 373, citing *Hulligan v. Bd. of Zoning Appeals* (1978), 59 Ohio App.2d 105, 392 N.E.2d 1272. See, also, *Machnics*, 2005-Ohio-935, at ¶55 ("\* \* \* although the state of Ohio has preempted the field of licensure regarding the regulation of motor vehicle dealers, no legal authority exists which suggests that a township is precluded from prohibiting commercial motor vehicle sales as part of its land use plan.").

{¶27} The Ohio Attorney General's position is further supported by the fact that Title 47 governs licensure or certification of *occupations and professions*—not land use. R.C. 4701 to 4709. In fact, R.C. 4737.07 begins with "[n]o *person* shall

-14-

operate or maintain a junk yard * * *". R.C. 4737.07's plain language read in the context of Title 47 as a whole leads us to conclude that the license issued under that section is a junk yard operator's license, which enables *the person* to operate a junk yard, not a license for the use of the land as a junk yard. Accepting the Smiths' argument leads to the absurd result that any person issued a license under Title 47, whether it be an accountant or a pawn broker, would likewise be able to open up a place of business to practice their occupation or profession notwithstanding local zoning. Nothing would prevent the establishment of such places of business, including junk yards, from being located in residential areas. As previously observed, "[i]t is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result." *Poland Bd. of Zoning Appeals*, 76 Ohio St.3d at 240, citing *Wells*, 18 Ohio St.3d at 384; *Slater v. Cave* (1853), 3 Ohio St. at 83-84. Stated in simple terms, the fact that one has a license to practice a profession or occupation is a separate requirement distinct from zoning regulations governing the location of the place wherein one may practice that profession or occupation.

{¶28} The logical result of the Smiths' argument is also antithetical to the General Assembly's delegation of its power to townships under Chapter 519 to manage the use of land within their unincorporated territory. Nevertheless, the Smiths argue that the General Assembly did not provide townships the ability to

prohibit junk yards in R.C. 4737.07, like it did for municipalities. While it is true that the General Assembly provided that a person who obtains a junk yard license under R.C. 4737.07 must still comply with ordinances enacted by *municipal corporations* regulating or prohibiting junk yards, we are not persuaded that the General Assembly intended junk yards to be exempt from township zoning by virtue of its silence in R.C. 4737.07 alone. Had the General Assembly intended to limit a township's authority to prohibit junk yards, it could have done so in Chapter 519, as it has done with other items of public concern, such as: outdoor advertising, agriculture, public utilities, railroads, liquor sales, oil and gas production, telecommunication towers, permanently sited manufactured homes, and small wind farms. R.C. 519.20-213. Furthermore, the fact that the General Assembly allowed municipalities to regulate and prohibit junk yards through zoning ordinances indicates the General Assembly's intent to permit local control over the location of junk yards.

{¶29} The Smiths rely heavily upon *Sheffield v. Rowland* (1999), 87 Ohio St.3d 9, 716 N.E.2d 1121 to support their preemption argument. We, however, find this case distinguishable from *Sheffield*. *Sheffield* involved the establishment of a construction and demolition debris facility licensed and regulated pursuant to Revised Code Chapter 3714. Id. at 9-12. Chapter 3714 appears in Title 37, which governs Health, Safety, and Morals, not the licensure of professions and

occupations, like Title 47 wherein Chapter 4737 appears. The regulations in Chapter 3714 are much more comprehensive than that found in Chapter 4737, manifesting the General Assembly's concern for state-wide uniformity. *Eastlake v. Ohio Bd. of Bldg. Standards* (1981), 66 Ohio St.2d 363, 369, 422 N.E.2d 598. For example, R.C. 3714.051 requires a permit to install new construction and demolition debris facilities, and R.C. 3714.06(A) requires that the facility annually renew an operation license, which is issued by the board of health or the Director of Environmental Protection. *Sheffield*, 87 Ohio St.3d at 11. The license application is site-specific and must include accompanying plans, specifications, and information regarding the facility and its operations. Id., citing R.C. 3714.06(A). Chapter 3714 also has various provisions concerning the inspection of such facilities, enforcement orders, suspension and revocation of the license, and makes violations of Chapter 3714 second degree misdemeanors. See R.C. 3714.08, .10, .12, .13, .99. Chapter 4737, on the other hand, contains no similar application process for the installation of new junk yards—evidence that the installation of junk yards was to be in accordance with local regulation. Although Chapter 4737 does provide for semi-annual inspections of junk yards and revocation of the license upon various violations (R.C. 4737.10), the regulations found in Chapter 4737 are far less comprehensive than in Chapter 3714.

{¶30} Most significantly, Chapter 3714 also provides several limitations on the location of construction and demolition debris facilities akin to those limitations that otherwise would have been provided for through local zoning. For example, a license may not be issued for a construction and demolition debris facility that is located within the boundaries of a one-hundred-year flood plain or within the boundaries of a sole source aquifer. R.C. 3714.03(B)(1)-(2). Licenses may also not be issued when the "horizontal limits of construction demolition debris placement at the new facility are proposed to be located": (1) within 100 feet of a perennial stream or a category 3 wetland; (2) within 100 feet of the facility's property line; (3) within 500 feet of a residential or public water supply well, subject to a few exceptions; (4) within 500 feet of a state or federal park, national recreation area, or land purchased for those purposes but not designated as such; (5) within 500 feet of any natural area, state wildlife area, nature preserve, or national wildlife refuse; (6) within 500 feet of a lake or reservoir of one acre or more that is connected to ground water; (7) within 500 feet of a state forest; (8) within 500 feet of a state historic landmark; and (9) within 500 feet of an occupied dwelling unless written consent is provided by the dwelling owner. R.C. 3714.03(C)(1)-(9). The only marginally similar requirement found in R.C. 4737.07 is the requirement of a fence or natural boundary around the perimeter of the junk yard to obscure its view. The absence of statutory limitations on the

location of junk yards, like those enacted in Chapter 3714 with respect to construction and demolition debris facilities, is further indication that the General Assembly intended to allow the location of junk yards to be determined by local regulation.

{¶31} For all these reasons, we conclude that R.C. 4737.07 and the Bath Township Zoning Resolution do not conflict with one another; and therefore, R.C. 4737.07 does not preempt the local Zoning Resolution. The license issued pursuant to R.C. 4737.07 is a separate requirement for the operation of a junk yard apart from local zoning. A landowner who owns land in a township and who wishes to establish a junk yard must: (1) determine that a junk yard is an acceptable use of his/her property under the township's zoning resolution (or secure a variance or conditional use permit for the junk yard if provided by the zoning resolution); and (2) obtain a license to operate the junk yard under R.C. 4737.07. See 1969 Ohio Atty.Gen.Ops. No. 69-136.

C. The Smiths' Use of their Property is not a Pre-existing Non-conforming Use

{¶32} Finally, the Smiths argue that the use of their property is a prior non-conforming use and should be allowed under R.C. 713.15 and Article 7 of the Zoning Resolution. R.C. 519.19 provides, in pertinent part: "[t]he lawful use of * * * any land * * *, *as existing and lawful at the time of enactment of a Zoning*

*Resolution* or amendment thereto, may be continued, although such use does not conform with such resolution or amendment * * *." In order to qualify as a pre-existing, nonconforming use under R.C. 519.19, the landowner must demonstrate by a preponderance of the evidence that the use of the property existed at the time of the effective date of the zoning change, and that the use was lawful at the time it was established. *Loy v. Liberty Twp. Bd. of Trustees*, 3d Dist. No. 5-02-60, 2004-Ohio-1391, quoting *Castella v. Stepak* (May 14, 1997), 9th Dist. No. 96CA0057, at *1, citing *Pschesang v. Terrace Park* (1983), 5 Ohio St.3d 47, 448 N.E.2d 1164, syllabus.

{¶33} The Smiths argue that the junk yard is a prior non-conforming use since the property had junk on it before he purchased it in 1986. That argument lacks merit. The previous owner, Janet Mauk, denied leaving scrap metal on the property and testified that she had never seen the scrap metal on the property as photographed in defense exhibits A and B. (Id. at 104, 106). Mauk testified that all of the business materials were taken from the property by a partner that bought out their share of the business. (Id. at 102). Smith, on the other hand, testified that the scrap metal photographed in defense exhibits A and B was on the property when he purchased it. (Id. at 118-20). He further testified that his brother purchased a junk bulldozer from the Mauks on this same property in 1980, but Mrs. Mauk denied ever having any equipment on the property. (Id. at 118-19);

(101). The testimony at trial also demonstrated that the property in question was zoned R-1, residential district, until 1984, when the township granted the Mauks' application to the have the property re-zoned to B-2, general business district, so their construction business could be established on the property. (Sept. 13, 2010 Tr. at 85-86, 97-99). The Smiths' property is currently classified as B-2, general business district, and junk yards were not permitted uses in B-2 general business districts under the 1986 Zoning Resolution or the 2006 Zoning Resolution, currently in effect. (Id. at 77); (P's Exs. 2-3, Art. 15).

{¶34} Even if the trial court found that the Mauks had left scrap metal on the property from their construction business and previously had an inoperable bulldozer as Smith testified, that does not mean their property was used as a "junk yard" or "scrap metal processing facility" as those terms are defined in R.C. 4737.05(B) and (D). Furthermore, even if these acts transformed the Mauks' use of the property into a junk yard, the Smiths failed to demonstrate that the Mauks' use of the property as a junk yard was lawful under the then-existing Zoning Resolution. At least since March 6, 1986, *and prior to the Smiths' ownership*, the property has been zoned B-2 general business district, where junk yards are not permitted uses. (P's Exs. 3-4); (Sept. 13, 2010 Tr. at 120). Therefore, the Smiths also cannot demonstrate that their use of the property as a junkyard was lawful, and as such, it is not a pre-existing non-conforming use as a matter of law. R.C.

519.19; *Loy*, 2004-Ohio-1391, quoting *Stepak* 9th Dist. No. 96CA0057, at *1, citing *Pschesang*, 5 Ohio St.3d 47, syllabus.

{¶35} For all these reasons, the Smiths' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING RELIEF BEYOND THE RELIEF REQUESTED BY A PARTY AND EXPRESSLY TRIED TO THE COURT.**

{¶36} In their second assignment of error, the Smiths argue that the trial court erred by ordering that he remove all debris from their property since the Township Zoning Inspector brought the action under R.C. 505.173(A) and (C) to remove junk motor vehicles alone from the property. The Smiths argue that the trial court erroneously granted a remedy beyond that provided in R.C. 505.173(B). We disagree.

{¶37} Civ.R. 15(B) provides, in pertinent part:

**When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * Failure to amend as provided herein does not affect the result of the trial of these issues.**

Throughout the course of this litigation, the zoning inspector sought more than merely the removal of the junk cars stored on the Smiths' property pursuant to

R.C. 505.173(B). In his June 3, 2006 letter, the zoning inspector indicated that the Smiths must remove "all debris, junk, vehicles, trailers, and general trash" from their property. (D's Ex. H). Furthermore, the zoning inspector's complaint sought a permanent injunction enjoining the Smiths "from violating the Zoning Resolution of Bath Township, Ohio *and/or maintaining a nuisance* on the premises at 1601 Reservoir Road * * *." (Doc. No. 1) (Emphasis added). In his memorandum contra to the Smiths' motion for summary judgment, the zoning inspector asserted that he initiated this action "to compel the removal of *junk* or inoperable motor vehicles." (Doc. No. 13) (Emphasis added). In both opening and closing arguments, the zoning inspector stated that the case was about junk vehicles and common law nuisance, generally, and sought an order enjoining the Smiths from storing "junk motor vehicles, junk, construction debris, or any other materials prohibited by the Bath Township Zoning Resolution." (Sept. 13, 2010 Tr. at 2); (Doc. No. 29). Aside from the zoning inspector's filings and his letter, it is also clear that the Smiths were aware that the zoning inspector was alleging that their use of the property constituted a nuisance for purposes of trial. (See Campbell Depo. at 21) (Q: "Now, in your complaint you indicate that the property is a nuisance. Can you explain that, why it's a nuisance?").

{¶38} Since the zoning inspector raised the issue of common law nuisance throughout the proceedings and at trial, it is treated as if it had been specifically

raised in the pleadings. Civ.R. 15(B). Furthermore, we find that the Smiths have waived this issue for purposes of appeal by litigating this matter in the trial court. As such, we cannot conclude that the trial court erred by enjoining the Smiths from keeping "other debris" on their property as the Smiths argue.

{¶39} The Smiths' second assignment of error is, therefore, overruled.

{¶40} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**